MOORE v. CHARLOTTE ELECTRIC STREET RAILWAY CO.

(Filed June 4, 1901.)

1. NONSUIT—*Dismissal—Evidence—Construction—Trial—Acts 1897, Ch. 109—Acts 1899, Ch. 131—Street Railways.*

   On a motion for nonsuit the evidence must be construed in the light most favorable to the plaintiff, both as to effect and credibility.

2. EVIDENCE—*Sufficiency—Nonsuit—Street Railways—Negligence —Personal Injuries.*

   Evidence in this case as to damages resulting from a collision of a street car with a vehicle should have been submitted to the jury.

ACTION by Walter Moore against The Charlotte Electric Street Railway Company, heard by Judge *W. S. O'B. Robinson,* at March Term, 1901, of the Superior Court of MECKLENBURG County. From a judgment of nonsuit, the plaintiff appealed.

*Osborne, Maxwell & Keerans,* for the plaintiff.
*Burwell, Walker & Cansler,* for the defendant.

DOUGLAS, J.    This was an action brought by the plaintiff to recover damages for injuries alleged to have been caused by the negligence of the defendant.

Walter Moore, the plaintiff, testified:

"On the night of March 26, 1900, at about 8 o'clock, I was driving a one-horse surrey on West Trade Street near the old court-house, and had started to drive across the track of the defendant to water my horse at a fountain near the old court-house. I looked and saw the car some distance from me. When the horse was about half-way across the rail I found the car near me and drew the horse's head around so as to get out of the way of the car that was coming, to prevent being struck. The car struck the surrey and broke both wheels in front and the top of same. I was thrown out between the dash board and the shaft, and was injured in my right side and hip, which disabled me for two weeks or more. It cost me $4.00 to have the top of the hack fixed, and about one month thereafter I had to quit business. When I started across the street I looked and saw the car about 30 or 40 feet beyond Church Street crossing. I had a light on the front of my carriage and the car also had a light on. The motorman could have seen some distance ahead that I was going to cross the track. When I first saw the car it appeared from the distance it was from me that I had plenty of time to cross over, but the motorman was running at such rapid speed that he struck me. He did not ring any gong until after I was struck, and did not stop the car until he had ran a length ahead of me, and then came and asked if I was hurt. It appeared to be running about fifteen miles an hour. I was on this side of Church Street crossing when the car struck me and the motorman did not ring any gong at Church Street crossing. It appeared to be running very rapidly when the car struck me. The length of the car was about twenty-four feet. It was only about one-half a block from the public square where I was stricken, and the street on which I was was one of the principal streets of the city, and on which many vehicles and passengers pass and cross. I started across,

but did not look for the car until my horse's feet were on the track.  As I pulled the curtain and looked, it was then about forty feet from me and appeared to be coming at about fifteen miles an hour.  I did my best to get out of the way."

At the close of the plaintiff's evidence the defendant demurred to same under Act 1897 as amended by the Act of 1899, and the Court sustained the demurrer and dismissed the action.  The plaintiff insists that the case should have been submitted to the jury and that there was more than a mere scintilla of evidence.

It is well settled in this State that on a motion for nonsuit the evidence must be construed in the light most favorable to the plaintiff, both as to effect and credibility.  This rule is clearly laid down by *Furches, J.,* in delivering the opinion of the Court in *Johnson v. Railway,* 122 N. C., 955, in the following words: "In cases of demurrer and motions to dismiss under the Act of 1897 the evidence must be taken most strongly against the defendant.  Every fact that it reasonably tends to prove must be taken as proved, as the jury might so find."  To the same effect are the following cases:  *Collins v. Swanson,* 121 N. C., 67; *Cable v. Railway,* 122 N. C., 892; *Cox v. Railroad,* 123 N. C., 604; *Cogdell v. Railroad,* 124 N. C., 302; *Gates v. Max,* 125 N. C., 139; *Capital Printing Co. v. Raleigh,* 126 N. C., 516.  Construing the evidence in the light of these decisions, we are of opinion that there was certainly more than a scintilla of evidence tending to prove the negligence of the defendant, and that the case ought to have been submitted to the jury.

In case of nonsuit, it is neither necessary nor practicable to discuss as fully in detail points that may arise, as it is in cases that have been tried where the alleged errors are specifically pointed out by exception, and we will therefore confine ourselves to a discussion of the general principle governing such cases.

As our State has few cities of even moderate size, and consequently but few street railways, we find but little help from our own Reports. In fact, neither of the learned counsel, who so ably argued the case, cited us to a single decision in this State which can be taken as an authority. In *Doster v. Street Railway,* 117 N. C., 651, there was no collision whatever, the damage being caused entirely by the mule, which took fright at the noise of the street car while running, as the plaintiff himself testified, "in the usual and ordinary way." The destructive proclivities and capabilities of a mule, whether frightened or not, are of common knowledge and furnish but slight analogy for any other kind of accident. In the absence of home authorities, we must examine those where street railways have longest been in most general use.

The following extract from the opinion of the Court in *Cooke v. Traction Company,* 80 Md., 551, 554, very clearly expresses our own views: "There is, to begin with, no possible analogy between a case growing out of an injury caused by a street railway car to a person rightfully upon the public thoroughfare, and a case involving an injury inflicted by a steam railroad train on a trespasser wrongfully upon the latter company's right-of-way. And this is so because the citizen has the same privilege to use the street for travel that the street railway company has for propelling its cars thereon; and the railway company has "apart from its franchise to lay its rails, no right to the use of the street as a highway superior in any degree to that possessed by the humblest individual. The franchise to lay its rails upon the bed of the public street gives to the company no right to the exclusive use of that street, and in no respect exempts it from an imperative obligation to exercise due and proper care to avoid injuring persons who have an equal right to use the same thoroughfare. It is bound to take notice of, recognize and respect the rights of every pedestrian or other traveller, and if by adopting a mo-

tive power which has increased the speed of its cars, it has thereby increased, as common observation demonstrates, the risks and hazards of accidents to others, it must, as a reciprocal duty, enlarge to a commensurate extent the degree of vigilance and care necessary to avoid injuries which its own appliances have made more imminent."

In *Thatcher v. Traction Co.,* 166 Pa. St., 66, 67, the Court says: "It is not our duty now, nor was it that of the Court below, to pass on the credibility of plaintiff's witnesses as to the rate of speed, and the absence of efforts to stop the car when the danger was manifest. That was for the jury. If the gripman recklessly ran on at a high rate of speed, when the probable consequence was a collision, that was negligence for which defendant was answerable. As is held in *Ehrisman v. East Harrisburg Co.,* 150 Pa., 180, 'It is not negligence *per se* for a citizen to be anywhere upon such tracks (railways or streets). So long as the right of a common user of the tracks exists in the public, it is the duty of passenger railway companies to exercise such watchful care as will prevent accidents or injuries to persons who, without negligence on their own part, may not at the moment be able to get out of the way of a passing car.' Or, as is said in *Gilmore v. Railway Co.,* 153 Pa., 31, 'Street railway companies have not an exclusive right to the highways upon which they are permitted to run their cars, or even to the use of their own tracks.' The right of the wagon, in certain particulars, is subordinate to that of the railway; the street car has, because of the convenience and exigencies of that greater public which patronizes it, the right of way; whether going in the same direction ahead of the car, or in an opposite one to meet it, the driver of the wagon must yield the track promptly on sight or notice of the approaching car; but he is not a trespasser because upon the track; he only becomes one if, after notice, he negligently remains there."

In *Robbins v. Street Railway,* 165 Mass., 30, 36, it is said: "The decisions of this Court show that a distinction has been taken with respect to the duty to look and listen when crossing the tracks of a steam railroad where a railroad train has the exclusive right of way, and when crossing the tracks of a street railway company in a public street, where the cars have not an exclusive right of way, but are run in the street in common with other vehicles and with travellers. The fact that the power used by the street railway company is electricity, instead of that of horses, has not been deemed by the Court sufficient to make the rule of law which has been laid down concerning the crossing of the track of a steam railroad exactly applicable to a street railway."

In *Newark Ry. Co., P. Ry. Co. v. Black,* 55 N. J. Law, 605, it is held that:

"2. The rule requiring one exercising his lawful rights in a place where the exercise of lawful rights by others may put him in peril to use such precaution and care for his safety as a reasonably prudent man would use under the circumstances, is the measure of duty for one who crosses a public highway on foot. He must use his powers of observation to discover approaching vehicles, and his judgment how and when to cross without collision, but his observation need not extend beyond the distance within which vehicles moving at lawful speed would endanger him."

"3. Street cars propelled by electricity and running along land burdened only with the easement of a public highway, can not be run at a rate of speed incompatible with the lawful and customary use of the highway by others with reasonable safety." In this case we quote from syllabi.

In *Kennedy v. Third Ave. R. Co.,* 52 N. Y. Sup., 551, the appellate division of the Supreme Court says: "The cable car had no absolute right to the exclusive use of the street. Pedestrians and vehicles have some rights which even cable

cars are bound to respect. They have a right to cross the street even though a cable car may be in sight. If not, then the city would be divided into as many zones as there are lines of power cars running the length of the island, and nobody could ever get across. It was not incumbent upon the driver of this vehicle to wait until no cable car was in sight before he attempted to cross. He had a right to cross the track when there was a reasonable opportunity to do so, even though it required the cable car to slacken its speed in order that it might not upset his vehicle. The rights of drivers of vehicles and of cable cars are reciprocal, and the gripman of a cable car is bound to use as much diligence to avoid running into a vehicle which is crossing its track, as the driver of a vehicle is to avoid running into a cable car which may be crossing its path. It seems to be assumed upon the part of the defendant that, unless a vehicle can certainly entirely clear a cable car approaching at a high rate of speed, its driver has no right to attempt to cross, and that the car is in no case bound to slacken its speed. We know of no such rule of the road." This case is approved and applied in *Blate v. Third Ave. R. Co.,* 60 N. Y. Sup., 732, in an opinion delivered on November 10, 1899.

In *McClain v. Brooklyn City R. Co.,* 116 N. Y., 459, it was held that: "A mere error of judgment does not necessarily amount to carelessness. If the plaintiff took reasonable care and then made a mistake as to the safest course to pursue in crossing the street, he was not guilty of contributory negligence for that reason." And again: "That the place was a public street and plaintiff had a right to go where he chose; that no matter how many cars were in the street he had a right to select any point to go across, but was bound to exercise care."

We freely admit that the company has the superior right to the use of its own tracks, as otherwise it could not use them at

all. If a wagon and a car meet going in opposite directions, the wagon must turn out, because the car can not. If going in the same direction, the wagon must also get off the track, because the car can not go around the wagon, and the public convenience requires a car to travel at a greater speed than the ordinary vehicle. But this superior right is not exclusive, and will not justify the company in needlessly interfering with the convenience of the public, or excuse it from the consequences of its own negligence.

Where the wagon and car meet at right angles, either can stop long enough for the other to pass without serious inconvenience; and as the wagon must cross the track in order to proceed, it is said that under such circumstances the rights of the wagon are somewhat greater than between crossings, with a corresponding obligation resting upon the railway company to exercise greater care on account of the greater probability of meeting vehicles and pedestrians, with the increased risk of accidents. But this rule can not be extended to interfere with the right of the public to cross the track with reasonable care at any point that their convenience may suggest. Booth on Street Railways, sec. 303, 304 and 305; Elliott on Roads and Streets, sec. 761, 765, 767, 810, 811 and 812.

Numerous other cases might be cited, but we think that the view we have taken is sustained by the practical consensus of judicial opinion, and certainly by the overwhelming weight of authority.

The judgment of nonsuit will be set aside, and the action tried upon its merits.

Error.