FRAZIER v. SOUTHERN RAILWAY COMPANY.

(Filed June 17, 1902.)

1. CONTRIBUTORY NEGLIGENCE—*Questions for Jury—Evidence —Verdict—Directing.*

Where there is conflicting evidence whether there was contributory negligence, the trial judge can not direct a verdict upon it against the plaintiff.

2. CONTRIBUTORY NEGLIGENCE — *Presumptions — Burden of Proof—Acts 1887, Chap. 33.*

In an action for personal injuries, the burden of proving that the person injured did not exercise due care in going upon railroad track is upon the defendant.

ACTION by C. P. Frazier, administrator of Henderson James, against the Southern Railway Company, heard by Judge *Walter H. Neal* and a jury, at February Term, 1902, of the Superior Court of GUILFORD County. From a judgment for the defendant, the plaintiff appealed.

*John A. Barringer,* for the plaintiff.
*King & Kimball,* for the defendant.

COOK, J. Upon the following issues, viz: "(1) Was intestate of plaintiff killed by wrongful act and negligence of defendant, as alleged? (2) Did intestate of plaintiff contribute to his death by his own negligence? (3) What damage, if any, is plaintiff entitled to recover?" His Honor charged the jury that if they believed the evidence they would answer the first issue "Yes," the second "Yes," and the third "Nothing," and the verdict was so entered.

The uncontradicted evidence shows that plaintiff's intestate was killed at a public crossing on East Washington street, a main thoroughfare over which there is a great deal of travel in the city of Greensboro, about sunrise in the morning.

The railroad track of defendant company runs from north to south, but in approaching that crossing from the north, the direction from which the train was coming which killed the intestate, the track makes a sharp curve to the southwest in a cut; so that the train approaching from the north can be seen from the crossing only about 100 yards. The street, East Washington, crosses the railroad track from east to west, and it is a difficult matter to see a train coming from the north on account of the houses on the east side and the embankment on the west.

On the east side, from which the intestate approached the crossing, Wilson's store is situate about 25 feet from the track, and is the nearest house to it. From this point, at Wilson's store, the approaching train could have been seen only about 100 yards.

By the charter of the city of Greensboro, Sec. 233, "All railroad trains are prohibited and forbidden to run faster than four miles per hour between north and south switch, and at a faster rate than ten miles per hour anywhere in the corporate limits of the city."

The testimony of plaintiff shows that the intestate was struck by the engine after he had crossed the east rail and just as he was stepping across the west rail out of the track, and was knocked 25 feet and thrown on the embankment on the west side; while that of defendant, the engineer, shows that he was in the middle of the track when the engine struck him. Plaintiff's evidence shows that the train was running 25 or 30 miles an hour; while defendant's evidence shows that it had been running a mile in the corporate limits at the rate of 25 or 30 miles an hour, and was running 20 miles an hour when he, the engineer, first saw intestate, who was then 10 or 12 steps from the track, coming from the east towards the crossing, and that it was running about 10 or 12 miles an hour at the *time the train struck him;* that the train was 75

or 100 yards from the crossing when the engineer first saw the intestate going towards it.

The evidence was also contradictory as to the signals. Plaintiff's evidence is to the effect that no whistle or bell was heard until the engine was immediately upon intestate, and then three blows, "toot, toot, toot," were given in rapid succession, as fast as a man could pull the cord, and as the third one sounded the engine struck him; while the evidence of defendant shows that the engineer sounded the whistle at the whistle-post for this crossing, and upon seeing intestate approaching the crossing had the bell rung, and seeing him "keep on coming towards the track," commenced sounding the whistle and trying to stop the train.

Now, then, upon this evidence his Honor instructed the jury to find that defendant was guilty of negligence (as to which defendant does not appeal), and that intestate was, upon that evidence, guilty of contributory negligence, to which plaintiff excepted and appealed. What is contributory negligence upon a *given state of facts* is a question of law to be decided by the Court. But if the facts are controverted, then it is the duty of the jury to find such and apply the law as charged by the Judge. The evidence in this case upon which contributory negligence is undertaken to be proved is conflicting, and his Honor erred in directing a verdict upon it. *Bogan v. R. Co.,* 129 N. C., 154. Intestate was not a trespasser; he had an equal right-of-way across the track with defendant company along the track, subject to the prior right of passage in the defendant company on account of the momentum of its train, confinement of its movement to the track, and the necessities and public nature of railway traffic; so he should wait until the train passes, the coming of which he should expect and ought to look out for. The prior right of the defendant, however, did not impose upon intestate the whole duty of avoiding the injury. They both

should have exercised care and diligence in regard to their respective duties, and were charged with a mutual duty of exercising reasonable care.    3 Elliott Railroads, Sec. 1153.

When intestate reached Wilson's store, from which point a train coming from the north could be seen 100 yards, it was his duty to there look and listen before undertaking to cross the track only 25 feet ahead of him; should he then have failed to see one, or if he had heard one, though not in sight, he may then have had the right to assume that he could cross over safely, and it may not have been negligence for him to have undertaken it, as the train was not permitted by law to run faster in that part of the city than ten miles an hour.    The burden of proving that he did not exercise such care is upon defendant, and the presumption that intestate did exercise due care, when confronted by danger, is raised and enforced by such burden of proof.    Acts 1887, Chap. 33; *Cogdell v. Railroad,* at this term.    So that, presuming that he did look and saw no train, or that he listened and heard one, could he not then have safely crossed before the train could reach the crossing, running at the rate of 10 miles an hour?    Or, if seeing the train coming, and presuming that it was running at the lawful rate of speed, he undertook to cross ahead of it, but in fact it was running 25 or 30 miles an hour, then what would have been the immediate proximate cause of the injury?    These were material questions of fact to be found by the jury, not the Judge.    Whether his going upon the crossing at the time he did, or the high and unlawful rate of speed, was the proximate cause of his death, was not within the province of the Court to decide.    Was the train running 10 or 12 miles, as testified to by defendant's witness, or 25 or 30 miles an hour at the time the train struck him, as testified to by plaintiff's witness?    Surely the triers of fact, as required by the Constitution, should have passed upon such questions.

A further material fact was, whether the train could have been stopped in time to prevent the accident, if it had been running only ten miles an hour, *after* the engineer saw intestate was going upon the crossing without heeding his signals, if he made such. "The object in limiting the speed where accidents are liable to occur is to keep the train within the control of the engineer, so as to enable him to stop in time to prevent such accidents after he discovers danger." *Edwards v. Railroad,* 129 N. C., 81. Again, whether the intestate, after being upon the track and seeing or ought to have seen the train coming, could have extricated himself from his peril, was also a question of fact for the jury. The testimony shows him to have been an old man—some saying 55 or 60 years of age, others 60 to 70, and others 75 or 80; so if, by reason of his old age he could not escape, and his injury would not have been inflicted if the train had been going its proper and lawful speed, then the jury ought to have been allowed to so find. If the evidence of plaintiff be true, then, under the statute imposing the burden of proof upon defendant, the plaintiff was entitled to recover; but if the evidence of defendant be true, then intestate recklessly and heedlessly walked upon the track in front of a moving train, and plaintiff would not be entitled to recover.

For the error in directing a verdict in the fact of conflicting evidence as to material and essential facts, a new trial is awarded.

New Trial.