### DENNY v. NORTH CAROLINA RAILROAD CO.

(Filed April 14, 1903.)

NEGLIGENCE—*Contributory Negligence—Personal Injuries—Passengers—Stations.*

> A passenger who voluntarily goes upon the platform of a moving train for the purpose of alighting at the station and is injured by reason of a jerk in the train is not entitled to recover therefor.

ACTION by W. R. Denny against the North Carolina Railroad Company, heard by Judge *Walter H. Neal* and a jury, at February Term, 1902, of the Superior Court of GUILFORD County. From a judgment of dismissal as of non-suit, the plaintiff appealed.

*Scales, Taylor & Scales,* for the plaintiff.
*King & Kimball,* for the defendant.

CONNOR, J. This is an action to recover of the defendant damages for personal injuries alleged to have been sustained by the plaintiff while a passenger on the train of the defendant's lessee. The portion of the evidence necessary to be considered in passing upon the exceptions to the ruling of his Honor is as follows:

The plaintiff testified that he purchased a ticket of the agent of the defendant's lessee at Greensboro, from that point to McLeansville, a station on the road, and paid therefor the sum of twenty-five cents; that he went into the defendant's car, and after the train left Greensboro the conductor came through the car to gather tickets of the passengers; that he handed the conductor the ticket, calling his attention to the fact that he wished to get off at McLeansville, saying "Do not forget me"; he spoke loud and the conductor nodded his head and he understood that the conductor heard him; as the train approached McLeansville it was a little late and was going at a pretty rapid speed; plaintiff kept his seat until

after the train had blown the regular station whistle about a mile from the regular stopping place; the whistle blew to stop at the station; plaintiff knew that it meant for the train to stop at the station; some time after the whistle blew, the plaintiff got up and went to the end of the car, and by that time the train had gotten nearly to the stopping place; he got up because he knew that the train was getting near the station, knew the whistle had blown, and knew that they had promised to stop there and let him get off; there is a regular stopping place there—a regular platform; the train stops there only long enough for a person to get off; on this accasion it did not stop at the regular stopping place but ran past about 150 yards; after it passed the regular stopping place it began to slow up, continued to get slower; just as it was coming to the stopping place, the plaintiff went out on the platform, and after it had gone 75 or 100 yards past the stopping place the plaintiff got on the steps, and then the train got slower and slower; it was going too fast for him to get off and he was waiting for it to get slow enough; he was holding with his left hand to one of the rods and there was a sudden jerk of the entire train, and at the same time his hold was broken and he had to pick his way the best he could to the ground; the jerk broke his hold and caused him to go off then; the snatch of the car which broke his hold was really the cause of the injury; the train did not stop entirely until after he fell; when this jerk came, the speed was quickened and the train ran on some distance. The plaintiff also testified in regard to his injuries.

Upon cross examination he testified that he had seen the notice posted up by the door that persons must not get on the platform while the train was moving, and that he knew that was the rule of the company; that if he had kept his seat until the train stopped the accident would not have happened, and that it would not have happened if they had not jerked

the train and he also knew that it was the rule of the company to stop at the regular prepared platform.

A. M. Rumley a witness for the plaintiff testified that the train was running about 8 or 10 miles an hour when he fell.

The defendant moved to non-suit the plaintiff. The motion was denied and defendant excepted. At the conclusion of the evidence the defendant renewed its motion to non-suit the plaintiff. The motion was allowed and judgment rendered dismissing the action, "as upon non-suit." The plaintiff excepted and appealed, assigning as error the ruling of the court upon defendant's motion.

The plaintiff relies upon the principle announced by this court in *Nance v. Railroad,* 94 N. C., 619. The correctness of the rule laid down in that case has not been questioned by any decision of this court, nor are we disposed to do so now. We fully approve it. It was the obvious duty of the defendant to stop its train at the station named on the plaintiff's ticket and permit him to get off safely, and if the movement of the train had been brought gradually slower until it had been brought "nearly—almost to a full stop", it would not have been negligence for the plaintiff to go out of the car on the platform and step to the platform of the station. Merrimon, J., speaking for the court says: "By '*nearly—almost to a full stop*', is meant very slow, a slight, gentle creeping movement." The learned justice further says: "The reasonable inference was that it was intended by such stoppage to let passengers get on and off the train. At least the *feme* plaintiff might draw such inference. There was therefore at least an implied suggestion from the conductor that she could do so." In that case the allegation in the complaint was that the train had already slackened its speed to nearly a "full stop", when there was no real or apparent danger, that the car had reached the usual place for getting off and when it was safe and without danger for her to do so she

stepped off, and while in the act of doing so was by a sudden jerk thrown down and injured.

In *Tillett v. Railroad,* 118 N. C., 1031, the plaintiff was on the train, and before he could by the exercise of reasonable diligence procure and occupy a seat, the car was brought into sudden and violent collision with another car in making a coupling, when the plaintiff was thrown down and injured. The court sustained a verdict for the plaintiff.

There can be no doubt that a sudden or violent jerk, movement or collision of the train by the engineer, while the train is at a station where passengers are known to be or have the right to be in the act of alighting from or going upon the cars, and in this is included leaving their seats for exit or passing to their seats, is *per se* negligence and the company is liable for any injury sustained thereby. It is also well settled that if the passenger be invited by the conductor or other employee of the company, whose duty it is to assist or advise passengers in that respect and to know the dangers, to alight, he may rely and act upon such invitation unless the danger in doing so is apparent. Wood on Railways, 1297.

In the case before us the train was a little late and was running at a rapid speed. When it blew for the station, the plaintiff left his seat and went to the end of the car. The train at that time had got nearly to the regular stopping place. Knowing that it stopped only for a moment, he stepped out upon the platform. By that time the train had nearly 75 or 100 yards past the stopping place and the plaintiff got on the steps, and the train began to get slower. It is manifest that the train was moving at a high rate of speed as it passed the platform. The plaintiff says that he knew the rule, and saw the notice posted up by the door that passengers must not go upon the platform while the train is in motion. It was negligent for him to go there and to go upon the steps of the car. The train at the time he was thrown

from the car was moving at the rate of about 8 or 10 miles an hour. He says, "It was going too fast for me to get off and I was waiting for it to get down slow enough." He says that the conductor was not on the platform and he never "heard him say a word."

We think that upon the plaintiff's own evidence there was no negligence shown on the part of the engineer. The duty to avoid jerks and sudden movements is imposed only when the train was stopped at a station for passengers to get off and on. While the train is in motion and in the absence of evidence, there is no presumption that a jerk is caused by his negligence. It was his duty to bring the train to a stop without danger or injury to passengers on the inside, or getting on and going to their seats. He cannot be presumed to know or anticipate that passengers, in defiance of the rules, have gone upon the platform and are standing upon the steps of the car while in motion. If it were shown in evidence that the engineer needlessly or carelessly caused a sudden and violent jerk of the train while in motion, and passengers who were not guilty of contributory negligence were injured thereby, the company would be liable. We must be understood as dealing with the case before us or such as come directly or reasonably within the rule.

There is no suggestion in the plaintiff's evidence that the conductor was upon the platform, or knew or had any cause to think that the plaintiff was there. "No recovery can be had if the cars are under such motion as to render it obviously dangerous for a person to attempt to leave them." Wood on Railways, 1304.

The plaintiff says that he went upon the platform to wait for the train to slow down enough to enable him to get off. It was that very thing which for his own safety he was notified not to do. "The plaintiff must have been aware of the dangerous position   in which he placed himself. He was

warned of this danger by the regulation of the defendant forbidding passengers to ride upon the platform." *Malcom v. Railroad,* 106 N. C., 64.

"The general rule is that passengers who are injured while attempting to get on or off a moving train cannot recover for the injury." *Brown v. Railroad,* 108 N. C., 34.

In *Lambeth v. Railroad,* 66 N. C., 494; 8 Am. Rep., 508, Mr. Justice Dick uses the following language: "That it is contributory negligence to 'attempt to alight' from a moving vehicle, although in consequence of the refusal of the carrier to stop, the passenger will be taken beyond his destination, unless he is invited by some employee of the carrier whose duty it is to see to the safe egress of the passengers from the conveyance. The mere fact that the train fails to stop, as was its duty, or as the conductor promised to do, does not justify a passenger in leaping off, unless invited to do so by the carrier's agent and the attempt was not obviously dangerous." This language is approved in *Burgin v. Railroad,* 115 N. C., 673. The fact that the conductor had promised to stop the train at McLeansville in no manner affected or increased the obligation to do so. If it made any impression at all upon the mind of the plaintiff, it would seem that it should have assured him that he might safely wait until the train stopped, as it was slowing down. The distinction between the case before us and *Johnson v. Railroad,* 130 N. C., 488, is clear.

This case is peculiarly similar to that of *Schieber v. Chicago, St. Paul and Min. R. Co.,* 61 Minn., 499, in which it is held: "The plaintiff was a passenger upon the defendant's railroad train operated by steam, and it was approaching the station at a dangerous rate of speed. He went, in anticipation of its stopping and for the purpose of being ready to get off when it should stop, upon the platform of the car and stood upon the steps thereof and was thrown therefrom

by a sudden jerk of the train. There was no evidence of any necessity for him to assume such position, or invitation express or implied by the defendant's agent in charge of the train for him to do so; Held that he was guilty of contributory negligence as a matter of law." The same rule is announced in *Jamison v. Railroad,* 92 Va., 327; 53 Am. St. Rep., 813; *Godwin v. Railroad,* 84 Me., 203. There is an obligation imposed upon the passengers to observe the reasonable regulations of the company in entering, occupying and leaving the cars. If a party be injured in consequence of the known violation of such regulations, the company is not responsible. *Turnpike Road v. Cason,* 72 Md., 377.

We think that upon the plaintiff's evidence, considered in the light most favorable to him, his Honor properly entered judgment of non-suit. We find no evidence of negligence on the part of the defendant.

Affirmed.