STEWART v. RAILROAD CO.

(Filed November 15, 1904).

1. EVIDENCE—*Pleadings.*

In an action against a railroad company for the wrongful death of plaintiff's decedent on its track, for the purpose of showing an admission of the killing by defendant a portion of a paragraph of defendant's answer containing such admission is admissible without the remaining portion.

2. HARMLESS ERROR—*Evidence—Issues.*

The exclusion of evidence relative to an issue found in favor of the party offering the evidence is harmless error.

3. EVIDENCE—*Railroads—Crossings.*

The failure of an engineer to sound his whistle at crossings other than the one at which the deceased was killed is not competent.

4. CONTRIBUTORY NEGLIGENCE—*Evidence—Railroads—Damages.*

In an action to recover damages for killing a person who was on the track drunk, the trial judge should instruct that the deceased was guilty of contributory negligence.

5. INSTRUCTIONS—*Negligence—Contributory Negligence.*

The refusal to give special instructions on the question of contributory negligence will not be reviewed where, on the evidence of the plaintiff himself, the court properly held as a matter of law that decedent was guilty of such negligence.

136——25

6. INSTRUCTIONS—*Trial.*

It is proper to refuse an instruction where there is no evidence on which to base it.

7. NEGLIGENCE—*Presumptions.*

The law presumes that a person killed by the negligence of another exercised due care himself, and that a person, here an engineer, does his duty.

8. NEGLIGENCE—*Railroads—Presumptions.*

An engineer is justified in assuming that a person apparently in possession of his senses, if on the track, will get out of the way of a train.

ACTION by J. J. Stewart against the North Carolina Railroad Company, heard by *Judge O. H. Allen* and a jury, at February Term, 1904, of the Superior Court of ROWAN County. From a judgment for the defendant the plaintiff appealed.

*R. Lee Wright* and *P. S. Carlton,* for the plaintiff.
*T. C. Linn, F. H. Busbee* and *Charles Price,* for the defendant.

MONTGOMERY, J.    This action was brought to recover damages from the defendant on account of the killing of the plaintiff's intestate through the alleged negligence of the defendant.    On the trial the plaintiff first introduced as a witness the widow of the deceased, who proved the age of the intestate, that he worked in a cotton mill at one dollar per day, that his health was good, also his habits, and that he left one child.    The mortuary tables showing the intestate's expectancy were next introduced.    Then the plaintiff offered in evidence a part of the first paragraph of the defendant's answer, to-wit, "that the plaintiff's intestate was struck by the engine pulling train thirty-four at the time alleged; that

no one saw him struck or ever heard him say anything about how he was struck, but the defendant alleges that the said deceased, J. R. Reeves, was upon the track and that the engineer of train thirty-four did not see him until he saw him fall." That evidence was objected to by the defendant unless the whole paragraph should be admitted. The omitted part of the paragraph, separated from the other by a colon, was in these words: "That the engineer and fireman were keeping a lookout, and in no way upon said occasion was the defendant negligent in its conduct against the said deceased." * * * The objection was sustained and the evidence offered excluded.

It was competent to show the killing of the intestate by the defendant and also to show its negligence. It was an admission, complete in itself, and the plaintiff was not compelled to put in matter of explanation or exculpation on the part of the defendant. The defendant would have that privilege itself. 1 Greenleaf Ev. (16 Ed.), sec. 201. But the error was harmless, for the first issue, "did the defendant negligently kill the plaintiff's intestate?" was answered in the affirmative. The broken paragraph was not evidence tending to show that the defendant could have avoided killing the intestate, on the supposition that the plaintiff was guilty of contributory negligence. There had been, up to the time the evidence was refused, no testimony offered on the part of the plaintiff going to show any opportunity the defendant might have had of avoiding the killing.

In the case on appeal it is stated that the *defendant* asked the witness Carter how many crossings there were between this crossing and Charlotte, and that the plaintiff objected and the objection was sustained. In the plaintiff's brief, however, his counsel state that the *plaintiff* asked the question and excepted to its exclusion. His contention was that within half a mile before reaching the crossing where the

intestate was killed there were within one half a mile from that spot at least five public crossings, and that if the engineer had given his signals at each of those crossings, the intestate or some other person would have heard them, and also that the failure to blow at each of those crossings was some evidence that proper signals were not given for the crossing where the intestate was killed, and that therefore the engineer was not exercising a proper lookout.

That view of the law no doubt was derived from the decision in *Fulp v. Railroad,* 120 N. C., 525. There is not raised in this case the question whether or not an engineer in charge of a moving locomotive is required to sound the whistle for a crossing in order to give notice to a pedestrian who is on the track beyond the crossing. We are clear, however, that if we should hold that to be the law, we would not extend the requirement to more than one crossing. His Honor was right in refusing the evidence.

His Honor instructed the jury to answer the second issue—that of contributory negligence on the part of the plaintiff—"Yes," if the killing of the deceased by the train is proved. There was no disputed fact concerning the intestate's conduct at the time he was killed. The evidence introduced by the plaintiff tended to show that the intestate was drinking, or drunk, that he was sitting or lying upon or very near the defendant's track, that there was an injury, mortal, on the forehead and one on the back of his head, that he was seen going toward this crossing in a state of intoxication, and the blood and hair were found on a bar of the cattle-guard by the track of the railroad and that the body was found there. One witness said "if he had been sitting on the cattle-guard, erect, I think he would have been hit about the chest; if he had been sitting there, leaning over, facing the track sidewise, I think the steam-pipe to the steam-chest would have struck him on the head. The hole in the front

part of his head corresponds with the size of this pipe or steam-cock in the steam-chest. This steam-pipe or cock projects out from the steam-chest and comes over the cross-beam on the end of the cattle-guard. To have hit him over the eye, he would have to be sitting with his head looking up the road. I cannot explain how it made only a little hole over the eye. He would have to be sitting sideways." As a matter of law, upon that evidence, his Honor properly told the jury that the intestate was guilty of negligence if they found that he was killed by the train. *Neal v. Railroad,* 126 N. C., 634, 49 L. R. A., 684; *Pharr v. Railroad,* 119 N. C., 757; *Frazier v. Railroad,* 130 N. C., 357.

The plaintiff requested his Honor to give twenty-four special instructions to the jury, and in his exceptions he insists that only one, the first, was given, and he excepted to nearly every sentence of the charge-in-chief. The special instructions asked, numbered one, two, three, four, sixteen, bore upon the question of contributory negligence of the plaintiff and need not be considered, for we have said that upon the evidence of the plaintiff the Judge correctly held as a matter of law that the intestate was guilty of contributory negligence and so instructed the jury. Requests numbered five, seven, ten, thirteen, fourteen, fifteen, seventeen and eighteen were given in substance in the main charge. Requests numbered six, twelve and nineteen need not be noticed, for they related to the first issue, and that issue was found against the defendant.

The twenty-fourth request was on the question of damages, and that was not pertinent, owing to the disposition that was made of the second issue. Requests numbered eight and nine were in substance that the law devolved upon the defendant the duty to keep a vigilant lookout in operating its trains when approaching public crossings, and if the defendant failed to keep such lookout and such failure was

the proximate cause of the intestate's injury, the jury should answer the first and third issues "Yes." His Honor properly refused to give the instruction, for there was no evidence tending to show that the failure to give signals for the crossing was the proximate cause of the injury. It did not appear from any of the evidence that the intestate could have heard the signals or could have gotten out of danger if he had heard them. There was no harm in refusing to give prayers numbered twenty and twenty-two, for the reason that the first issue was found against the defendant, and the second was, upon the evidence of the plaintiff, ordered to be found for the defendant and against the plaintiff.

The twenty-first prayer was in these words: "If the jury find from the evidence that the plaintiff's intestate was drunk and was in a helpless condition upon or near the track and was unable to realize the dangerous position he was in, then the intestate would not be guilty of contributory negligence, and the jury should answer the second issue "No." His Honor properly refused to give that instruction.

We cannot understand how it can be contended that a man who would drink spirituous liquor until he should become unconscious, or take anything else until he should become insensible, and then lie down in that state upon a railroad track, is in the exercise of due care for his personal safety. Such a contention seems to us to be trifling with the law. In *Pickett v. Railroad,* 117 N. C., 616, 53 Am. St. Rep., 611, 30 L. R. A., 257, where two negro boys laid down on a railroad track and went to sleep, it was held that they were guilty of contributory negligence; and so, in *Lloyd v. Railroad,* 118 N. C., 1010, 54 Am. St. Rep., 764, where a man drunk and lying on the track was killed, it was held that he was negligent.

The twenty-third prayer was properly refused, for it is founded on evidence offered but properly excluded.

The plaintiff in the first instruction prayed for asked his
Honor to tell the jury that "The law presumes that a person
found dead and killed by the negligence of another exer-
cised due care himself." The instruction was given as asked
but his Honor added, "likewise the law presumes that a per-
son, such as an engineer, does his duty," to which the plain-
tiff excepted. His Honor went on to say further: "In fact,
as a rule, the law does not presume negligence, and it re-
quires a person who charges a breach of duty or negligence
to prove it." The plaintiff excepted to the latter clause of
that sentence.

The question raised by this last exception has been fre-
quently held by this Court against the plaintiff, and we see
no error in the instruction of the Judge to which the first
exception was directed.

On the third issue the Court in drawing a distinction be-
tween injury by trains to animals and human beings said:
"The law is different as to a dumb animal and a human
being because of the intelligence of the human being. If a
human being is upon or near a track and apparently in pos-
session of his senses, the engineer is justified in assuming
that such person will use his faculties for his own safety
and get out of the way, and he would not be required to stop
or slack his speed." The plaintiff excepted to that proposi-
tion of law. It was true. And although it was without
strict application to the facts of this case, it could have done
the plaintiff's cause no harm. The Court went on to say:
"But if a person on or near enough to the track to be in
danger is down and in such a condition as to indicate that
he is helpless, then it becomes the duty of the engineer to
take notice of this apparently helpless condition if he sees
him in time, or could have seen him in time in the exercise
of due care." The plaintiff excepted to that part of the
charge. He contends that the instruction made the liability

of the defendant in this case to depend on whether the intestate was actually *down,* and leaving the jury under the impression that unless they found the intestate was actually down they should answer the third issue—the last clear chance, as it is called—"No." The exception was too technical to be sustained. The jury could not have been misled by it.

No Error.

DOUGLAS, J., dissents.