WHISENHANT v. RAILROAD.

(Filed December 20, 1904).

1. NEGLIGENCE—*Master and Servant.*

> Where a freight train on which plaintiff and other laborers of a road were riding home was given a sudden increase of speed and a violent jerk by the engineer putting on steam in response to a signal from the conductor when the slowing train was naturally expected to be about to come to a full stop to let the laborers off, there was negligence on the part of the railroad.

2. NEGLIGENCE—*Contributory Negligence—Proximate Cause—Evidence—Questions for Jury.*

> In this action against a railroad for personal injuries the evidence of contributory negligence of the plaintiff and as to the proximate cause of the injury should have been submitted to the jury.

MONTGOMERY, J., dissenting.

ACTION by Joseph Whisenhant against the Southern Railroad Company, heard by *Judge Walter H. Neal* and a jury,

at October Term, 1904, of the Superior Court of BURKE County. From a judgment for the defendant the plaintiff appealed.

*Avery & Avery* and *Avery & Erwin,* for the plaintiff.
*S. J. Ervin,* for the defendant.

CLARK, C. J. The plaintiff, with other laborers working on the defendant's road west of Morganton, was daily hauled to his work and returned home on the work or gravel train. This train stopped at Morganton daily in the evening in order that the plaintiff and other laborers living at that place might get off. There was evidence tending to show the following to be the facts on this occasion: The train was returning from work and was running backward, the caboose in front, then four flat cars, on which the laborers sat on the floor, there being no seats nor railing, then the tender and engine. The caboose was locked so the laborers could not enter it. The train slowed up for Morganton, whereupon the plaintiff got up and went to the platform of the rear end of the caboose, it not being safe to stand up on the flat car, and stood on the top step to be ready to get off when the train stopped. There were no steps to the flat car by which he could get off. The engineer, instead of stopping as usual at that point in response to a signal from the conductor, suddenly put on steam which caused a sudden and violent jerk which threw the plaintiff on the track, broke his skull and otherwise injured him. This sudden increase of speed and violent jerk, when the slowing train was naturally expected to be about to come to a full stop to let the laborers living in Morganton get off, was negligence on the part of the defendant. The plaintiff could not safely have stood up on the flat car, and in stepping upon the rear platform of the caboose car, to be ready to get off more readily and promptly, the plaintiff was not guilty of contributory negligence unless it

was shown that this was a more unsafe place. Whether it was more unsafe was a question for the jury. This is not the case of one sitting in a passenger coach getting up and going out to stand upon the platform. Here the plaintiff could not get into the caboose. He could not stand up on the flat car. Whether in going upon the platform of the caboose he took a greater risk and thus incurred contributory negligence, and whether, if he did, the subsequent negligence of the defendant in unexpectedly increasing speed (instead of stopping as usual), and the sudden and violent jerk which threw the plaintiff off the train injuring him, were not the proximate cause of the injury—were eminently questions of fact which only a jury could determine. It was, therefore, error to nonsuit the plaintiff, for by so doing the Judge passed upon the issues of fact which should determine this cause: (1) Whether or not the plaintiff was guilty of contributory negligence; (2) if that was true, was such contributory negligence, or the subsequent negligence of the defendant by increasing speed and causing the plaintiff to be thrown off, the proximate cause of the injury. If the plaintiff could have escaped unhurt but for the jerk, the negligence of the conductor in signaling at that point for an increase of speed, instead of stopping as usual for the plaintiff and others to get off, as from custom they had a right to expect, and the negligence of the engineer in suddenly turning on steam thus causing a violent and unexpected jerk, was the proximate cause.

Upon a nonsuit, the evidence must be taken in the most favorable light for the plaintiff. The cause should have been submitted to the jury with appropriate instructions upon the different phases of the evidence. The plaintiff is entitled to have a jury pass upon his allegations and proofs, as guaranteed by the Constitution.

Error.

MONTGOMERY, J., dissenting.   This action was brought by
the plaintiff to recover damages for personal injuries sus-
tained by the plaintiff through the alleged negligence of the
conductor on one of defendant's trains.   The negligence com-
plained of is, in substance, as follows: That the defendant
owed the plaintiff, who was employed by defendant as a
laborer engaged in the repairing of the railroad track, the
duty of carrying the plaintiff to and from Morganton on his
going to and returning from his work.   That the habit and
custom of the defendant was to slow down a rate of speed of
the engine and train upon reaching a cross street in Morgan-
ton, near to station, so that the plaintiff could alight and
go to his home; that on one of these return trips the plaintiff,
while standing on the platform of the caboose when the train
had slackened its speed and he was ready to alight, was sud-
denly hurled to the ground through the negligent conduct of
the conductor, who suddenly and without warning to the
plaintiff gave a signal to the engineer which resulted in a vio-
lent jerk.   The evidence did not make good the allegations of
the complaint.   The plaintiff's evidence was to the effect that
it was the habit and custom of the conductor to *stop* the train
at the cross street in Morganton and that the plaintiff always
got on and off after the train had been stopped.   The plain-
tiff's evidence was, further, that as the train approached Mor-
ganton and had slowed to a low rate of speed, that is, as he
said, from three to five miles an hour, he went out on the plat-
form with a bundle and bucket in one hand and holding with
the other to an iron rod attached to the platform, and just as
he was about to alight was thrown off and to the ground
through a sudden jerk and motion of the cars and badly hurt.
His testimony further was that if he had been sitting down
on the flat cars he would have been perfectly safe.

The much-discussed question in the oral arguments and in
the briefs on the subject of contributory negligence is not

necessary for us to discuss from the view we have taken of the case. We cannot see in what particular the defendant has been negligent. There cannot be culpable negligence in any case where the party charged with the negligence owes no duty to the other. In *Carter v. Lumber Co.,* 129 N. C., 203, the Court approves of the definition of negligence given by *Alderson, B.,* in *Blythe v. Water-works,* 25 L. J. Eq., 213, which is as follows: "The omission to do something which a reasonable man guided upon those considerations which ordinarily regulate the conduct of human affairs would do; or doing something which a provident and reasonable man would not do; and an action may be brought if thereby mischief is caused to a third party *not* intentionally." Another good definition of negligence is found in 7 A. & E. Ency. of Law, 370, which is in these words: "Actionable negligence is the inadvertent failure of a legally responsible person to use ordinary care under the circumstances in observing or performing a non-contractual duty implied by law, which failure is the proximate cause of injury to a person to whom the duty is due." Now, under the evidence in this case, I mean the plaintiff's evidence, the duty of the defendant was to furnish the plaintiff safe transportation to Morganton, to stop the train at or near the station, at the usual place where the plaintiff got off, that he might alight in safety. The conductor did not stop the train as he ought to have done, but that was not the cause of the injury. The cause of the injury was the sudden jerk of the train by which the plaintiff was thrown off the car and injured. If the jerk had occurred at the stopping place, and after the train had stopped or was "nearly, almost to full stop," that is, very slowly and slightly, and gently creeping along, that the plaintiff might alight, the defendant would have been negligent. *Nance v. Railroad,* 94 N. C., 619; *Denny v. Railroad,* 132 N. C., 340.

But the train in our case was moving at from three to five miles an hour, and the defendant had been standing some little time on the platform. The defendant did not owe him the duty to keep a lookout for the plaintiff on the platform. The conductor had a right to suppose that he was in a place of safety which had been provided for the laborers on that train. A jerk of the cars, therefore, while the train was in motion was not negligence in the conductor, so far as this plaintiff was concerned, who was standing on the platform. The defendant owed the plaintiff no duty to look out for him and to care for him in that unusual place, that place of danger. Of course, if the conductor or engineer had seen the plaintiff in the situation in which he placed himself, the sudden jerk of the cars, if it had occurred then, would have been evidence of negligence. Or if the plaintiff had been where he ought to have been, in a safe place, by his own admission, and had been injured by the sudden jerk, then that fact would have been evidence of negligence on the part of the defendant. *Denny v. Railroad, supra.* I think there was no error in the dismissal of the action as by nonsuit.