### UNITED STATES LEATHER CO. v. HOWELL.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1907.)

No. 693.

1. COURTS—UNITED STATES COURTS—STATE LAWS AS RULES OF DECISION—FELLOW SERVANT ACT OF NORTH CAROLINA.

The Supreme Court of North Carolina having decided that the fellow servant act of that state (Revisal N. C. 1905, § 2646), providing that "any servant or employé of any railroad company" injured through the negligence of any other servant, employé, or agent of the company may maintain an action therefor against the company, applies to a manufacturing corporation which owns and operates a spur track on its grounds as incidental to its main business, with respect to servants employed in such service such construction of the statute is binding on the federal courts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 957.

Ed. Note.—State laws as rules of decision in federal courts see note to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

**2. NEGLIGENCE—DEFENSE OF CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY UNDER NORTH CAROLINA STATUTE.**

Under Revisal N. C. 1905, § 483, which provides that "contributory negligence must be pleaded and proved by the defendant," as construed by the Supreme Court of the state, the trial judge cannot direct a verdict on a plea of contributory negligence, but must submit the issue to the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, § 333.]

**3. TRIAL—INSTRUCTIONS—REQUESTS.**

The court is not required to give requested instructions in the identical words used therein, but it is sufficient if they are substantially given.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, § 665.]

**4. MASTER AND SERVANT—ACTION FOR INJURY TO SERVANT—QUESTIONS FOR JURY.**

Evidence considered in an action by a servant to recover for an injury received while coupling cars through the alleged negligence of the engineer, and *held* sufficient to justify the court in refusing to direct a verdict for defendant, and in submitting the case to the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1051–1067.]

In Error to the Circuit Court of the United States for the Western District of North Carolina, at Charlotte.

E. J. Justice, for plaintiff in error.

Locke Craig (C. H. Armfield and W. D. Turner, on briefs), for defendant in error.

Before GOFF and PRITCHARD, Circuit Judges, and McDOWELL, District Judge.

PRITCHARD, Circuit Judge. This is an action at law instituted in the superior court for the county of Mitchell, N. C., against the United States Leather Company (a corporation organized under the laws of the state of New Jersey and doing business in North Carolina) for injuries alleged to have been sustained by E. H. Howell, the defendant in error, while engaged in coupling cars of the plaintiff in error at its tannery at Old Fort, in that state. On a petition filed by the United States Leather Company, the plaintiff in error, the case was removed to the Circuit Court of the United States and tried at the June Term, 1906, of that court at Charlotte. The plaintiff in error has a large tannery at Old Fort, and on its yards has spur tracks connecting with the tracks of the Southern Railway Company upon which are placed cars for loading and removing freight of various kinds, consisting principally of wood and tan bark. Defendant in error was an employé of the United States Leather Company at the time he was injured and was in the discharge of his duties as such; at which time the leather company was engaged in weighing loaded cars composing the train, and the car in question had been placed upon the scales and uncoupled at both ends for the purpose of correctly ascertaining its weight. After the car had been weighed, W. W. McElroy, who was at the time acting as engineer, in response to a signal from defendant in error backed the train so that the car could be coupled, and the coupling was made at the front end by a man named

Jordan. Howell was at the other end and made the rear coupling. Up to this point there is no dispute as to the facts. However, plaintiff in error contends that the train, after making the coupling at the front end, continued to move backwards, and that Howell at the rear end, while the train was in motion, thrust his foot between the drawheads at the moment of impact. On the other hand, the defendant in error contends that after making the front coupling the train stopped, and while it was standing still he attempted to adjust the drawhead by kicking it into place; that when "his lick was too far gone to catch" the engineer, without warning, unexpectedly and suddenly moved the train backward, crushing Howell's foot between the drawheads. There was a verdict and judgment for the defendant in error, from which judgment a writ of error was sued out to this court.

The first exception relates to the ruling of the lower court as to the law bearing upon the facts in this case. It was held by the court below that McElroy, whose negligence is alleged to have caused the injury complained of, was at the time of the accident the vice principal and not the fellow servant of the plaintiff in error. We do not deem it necessary to discuss this phase of the case in view of the conclusion reached in regard to the construction of the fellow servant act of North Carolina.

The next point raised is also involved in the first exception. The decision of the Supreme Court of that state in the case of Bird v. Leather Company (N. C.) 55 S. E. 727, renders it unnecessary to consider many of the questions sought to be raised by the assignment of errors. Even if the contention of plaintiff in error that the vice principal was acting in the capacity of a fellow servant at the time the injury occurred be correct, still we are confronted with the proposition that the plaintiff in error is a railroad corporation within the meaning of the fellow servant act of North Carolina, and the rule which plaintiff in error seeks to invoke does not apply in this case.

Section 2646, Rev. Laws N. C. 1905, is as follows:

"Any servant or employé of any railroad company operating in this state who shall suffer injury to his person, or the personal representative of any such servant or employé who shall have suffered death in the course of his services or employment with such company by the negligence, carelessness or incompetence of any other servant, employé or agent of the company, or by any defect in the machinery, ways or appliances of the company, shall be entitled to maintain an action against such company. Any contract or agreement, expressed or implied, made by any employé of such company to waive the benefit of this section shall be null and void."

This section has been construed by the courts of that state in the cases of Tanner v. Lumber Co., 140 N. C. 478, 53 S. E. 287; Hemphill v. Lumber Co. (Aug. 4, 1906) 54 S. E. 420, 69 L. R. A. 887. In these cases it was held where one operates a branch road or spur track similar to the one owned by the plaintiff in error that such road is a "railroad" within the meaning of the fellow servant act.

Since the submission of this case the court has been furnished with a supplemental brief in which reference is made to the case of Bird v. Leather Co., supra, in which the opinion of the Supreme Court of North Carolina was handed down on December 11, 1906. It appears

that the plaintiff in error in that case instituted an action in the state court against the plaintiff in error in the present action, and the court in that case holds that section 2646 (the fellow servant act hereinbefore referred to) applies to the plaintiff in error in the case at bar. The syllabus in the case of Bird v. Leather Company, supra, is as follows:

"When a corporation in aid of its primary purpose owns and operates a railroad, the Fellow Servant Act applies in the determination of liability for acts resulting therefrom."

In that case the defendant company relied upon the defense that the cause of the injury was the result of an act of a fellow servant, and therefore the plaintiff was not entitled to recover. The issue raised was well-defined, and after a careful consideration by the court it was decided against the contention of the defendant company. This being the construction of a statute by the Supreme Court of the state where this action was instituted, we adopt the same as the proper rule of construction to be placed upon the fellow servant act to which we have heretofore referred.

In the case of Kibbe v. Stevenson Iron Min. Co., 136 Fed. 149, 69 C. C. A. 147, the question involved in this controversy was before the court and in discussing the matter Sanborn, Circuit Judge, who delivered the opinion of the court, among other things, said:

"The national courts uniformly follow the construction of the Constitution and statutes of a state given by its highest judicial tribunal in all cases which involve no question of general or commercial law and no question of right under the Constitution and laws of the nation. Bolles v. Brimfield, 120 U. S. 759, 763, 7 Sup. Ct. 736, 30 L. Ed. 786; Detroit v. Osborne, 135 U. S. 492, 499, 10 Sup. Ct. 1012, 34 L. Ed. 260; Madden v. Lancaster County, 65 Fed. 188, 192, 12 C. C. A. 566, 570; Clapp v. Otoe County, 104 Fed. 473, 477, 45 C. C. A. 579, 582; City of Beatrice v. Edminson, 54 C. C. A. 601, 604, 117 Fed. 427, 430. The Supreme Court of Minnesota has decided that section 2701, Gen. St. 1894, governs the relation of master and servant, and the liability of the former to the latter when they are engaged in the operation of a short railroad owned and operated by a mining corporation, which is not a railroad corporation, for the sole purpose of operating its mine, and that the statute thus construed does not violate any provision of the Constitution of the state of Minnesota. It has held that this statute applies not to railroads as such, but to railroad hazards; that it governs 'all persons and corporations operating a line of railroad incident to which are the hazards and risks intended to be guarded against by the Legislature'; and that the statute thus construed is not violative of the Constitution of the state."

The third exception is to the refusal of the court to direct a verdict against the defendant in error on the plea of the defense of contributory negligence. Section 483, Revisal N. C. 1905, provides "that contributory negligence must be pleaded and proved by the defendant." It has been repeatedly held by the courts of that state that the trial judge cannot direct a verdict upon the plea of contributory negligence, but must submit the same to the jury, as was done in this instance. Frazier v. R. R. Co., 130 N. C. 355, 41 S. E. 941; House v. R. R. Co., 131 N. C. 103, 42 S. E. 553; Sherrill v. R. R. Co., 140 N. C. 252, 52 S. E. 940; Whisenhant v. R. R. Co., 137 N. C. 349, 49 S. E. 559. This issue was submitted to the jury and found in favor of the defendant in error, and in view of the evidence we are not inclined to hold that it was error.

The fourth exception is to the refusal of the court to give the plaintiff in error's special instruction set forth in such exception. We think that the court below properly refused this instruction, inasmuch as there was not sufficient evidence to sustain the same. In so far as the evidence justified this exception it is covered, we think, by the general charge of the court. We fail to find any evidence which warrants the assumption that the engineer was trying to couple two cars at the same time without stopping the engine after the first coupling. In other words, there is no evidence to show that the defendant in error gave the engineer a signal which would justify him in assuming that two cars were to be coupled at the same time.

As to the fifth exception we think that the ruling of the court was proper under the circumstances, especially in view of the fact that the court correctly stated the rule in its charge to the jury upon the subject.

In considering exceptions numbers 7, 8, 9, 10, and 11, we are of the opinion that there is no merit in the same. We have read and carefully considered the very able and exhaustive charge of the learned judge who tried this case, and we are satisfied that his charge clearly and fairly states the law applicable to the issues and evidence pertaining to the same.

The court is not required to give instructions in the identical words used therein, and if the same are substantially given it is sufficient. Burton v. March, 51 N. C. 409; Mitchell v. Corpening, 124 N. C. 472, 32 S. E. 798; Cox v. R. R. Co., 126 N. C. 103, 35 S. E. 237; Brown v. Power Co., 140 N. C. 333, 52 S. E. 954, 3 L. R. A. (N. S.) 912.

We will now consider out of its order the second exception which is to the refusal of the court to instruct the jury "that there was no evidence to go to the jury that the plaintiff was injured by the negligence of the defendant as alleged in the complaint." This exception is in the nature of a demurrer to the evidence. Howell, the defendant in error, testified as follows:

"As soon as the car was weighed the man at the scales said 'all right,' and I was back from the cars a little piece—the track curved a little piece—and I couldn't see Mr. McElroy standing up beside the car, and I stepped up with the scales and asked Charlie Jordan if he had made his coupling. He said, 'Yes, he had made it.' (The car was standing still.) I looked at my coupling, and the drawhead of the car had slipped down so that it wouldn't couple when it came together. It was standing and just a little distance apart, and I saw that it didn't make and that the drawhead had to be pushed over, and I stepped between the cars and took my left foot to kick the drawhead over so it would make the coupling, and just as I did that he struck the three cars on the left, and the slack run back, and the engine come right on back and threw me and the space caught me. Q. When you went in between the cars what was the position of the car at that time? A. They was standing still, sir, to the best I know. Q. Well, was any signal given that you know of to the engineer to come back? A. Not that I remember of. * * * Q. Why did you use that [your foot]? A. I didn't have anything else to make it with, and thought I was perfectly safe in doing it as the car was standing still. Q. As you went in there then the car was standing still? A. Yes, sir. Q. As you went in what took place? A. As I made my lick to kick the drawhead over he struck the back cars. There was three cars coupled to the engine;

but my lick was too far gone to catch, and he struck the back car and knocked the slack back, and the engine just jerked me back into space, and the drawhead caught me. * * * Will you tell the jury why you didn't step back out there before you put your foot in there and signaled? A. The train was standing. I thought it would stand still. * * * Q. Now, Mr. Howell, whose business was it to indicate when those cars were to move, yours or McElroy's? When you want to make the coupling, do you or McElroy make the sign? A. The man who makes the coupling gives the sign. Q. When you were making that coupling it was McElroy's duty to obey your signal when you signaled to him? A. Yes, sir; it was his duty. He was over me. * * * Q. Now then, when he makes his coupling, what is his duty? A. That is what I wanted to explain a minute ago. If you will let me explain that, I can tell you the way I understand it. Whenever you signal an engineer to go ahead or come back in coupling cars, when he strikes the cars or hits anything he is supposed to stop until he gets another signal. This is the way I understand it. That is the reason that I thought it was safe when I stepped in there to kick the drawhead. * * * Q. When he makes the coupling? A. When an engineer is waved back and hits he is supposed to wait until he is signaled again. Q. That is what you were relying upon? A. Yes, sir. Q. So that when Jordan made the coupling, and the cars were standing still, you thought it was safe to go in there? A. Yes, sir."

This testimony was practically uncontradicted. McElroy, a witness for the plaintiff in error, testified that he thought the train stopped. Terrell, another witness for the company testified:

"Q. Isn't it the duty of the engineer to wait when the first coupling is made for another signal? A. I would expect him to wait. * * * Q. When the engine is standing still, don't you expect the engineer to give the switchman notice he is going to move his engine? A. If I was going to couple I would give him a signal when to move. * * * Q. And you would expect him to give you the signal when he moved. A. I would expect him to move the engine whenever I give him the signal to. Q. You wouldn't expect him to move until you did? A. No, sir. Q. If the engineer was going to move his engine without having been signaled to do so, wouldn't it be his duty to give his signal to the flagman? A. It would be his duty to wait until he got a signal. Q. And if he didn't get a signal it would be his duty to give one? A. It would be his duty to stand still until he got one. * * * Q. He must wait for the signal? A. Yes, sir. Q. And if the cars are standing still the brakeman is at liberty to go in and adjust them and then step out for the signal? A. Yes, sir."

Hemphill, another witness for the company, testified that he couldn't say whether the train stopped or not.

We have given due consideration to the foregoing evidence, and are of opinion that the trial judge was justified in submitting the same to the jury. The defendant in error testified that he went between the cars to adjust the couplers while the train was at a standstill, and that the engineer who was in charge of the engine suddenly ran the cars together, as a result of which he was injured. He also testified that no warning was given him by the engineer as to his intention to move the cars, and that the engineer without any signal from him moved the cars in a careless, negligent, and reckless manner which resulted in his injury.

It was shown by Terrell, a witness for plaintiff in error, that it was the duty of the engineer to wait when the first coupling was made until another signal was given him before moving the cars again. It was also shown by this witness that it was the duty of one engaged

in coupling cars to signal the engineer each time before the cars were moved.

While the evidence of the defendant in error was contradicted to some extent by McElroy, and perhaps others, at the same time, his evidence was such, if taken alone, as to warrant the jury in returning a verdict in favor of the defendant in error. In other words, the evidence was such as to raise an issue about which reasonable men might reasonably differ, and this after all should be the true test in determining whether under a given state of facts the trial judge should take the case from the jury.

In the case of Hopkins v. R. R. Co., 131 N. C. 464, 42 S. E. 902, the court in discussing this question, among other things said:

> "It is well settled that on a motion for nonsuit, or its counterpart, the direction of a verdict, the evidence of the plaintiff must be accepted as true, and construed in the light most favorable for him. Moore v. St. Ry. Co., 128 N. C. 455, 39 S. E. 57; Coley v. R. R. Co., 129 N. C. 407, 413, 40 S. E. 195, and cases therein cited. In Purnell v. R. R. Co., 122 N. C. 832, 29 S. E. 953, Justice Furches, speaking for the court says: 'This motion is substantially a demurrer to the plaintiff's evidence, and this being so, and the court having no right to pass upon the weight of evidence, every fact that plaintiff's evidence proved, or tended to prove, must be taken by the court as proved. It must be taken in the strongest light as against the defendants.' Thus construing the evidence, there can be no doubt that the case should have been submitted to the jury. Therefore there was error in the judgment of nonsuit."

There are numerous other decisions of the Supreme Court of North Carolina which are in harmony with the foregoing; but we do not deem it necessary, for the purposes of this case, to refer to the same.

The record discloses the fact that the case at bar was tried with great care by the trial judge, and that every possible defense to which plaintiff in error was entitled was submitted to the jury for their consideration, and we are therefore of opinion, for the reasons hereinbefore stated, that the judgment of the Circuit Court should be affirmed.

Affirmed.

McDOWELL, District Judge, concurs in the conclusion reached.