ROSS v. COTTON MILLS.

(Filed November 28, 1905).

*Master and Servant—Defective Appliances—Negligence—*
*Res Ipsa Loquitur—Evidence—Question for Jury—Ex-*
*ceptions.*

1.  While the plaintiff was operating a lapper in a cotton mill it
    became choked and he stopped it with the belt shifter and put
    his hand into the beater bars to get the cotton out, and the
    machine, by some unknown means, started and tore his arm off,
    and there was evidence that the belt shifter was wider than
    the belt and that a piece of wood had been put on to make it
    correspond with the width of the belt, *held*, that the plaintiff,
    upon the doctrine of *res ipsa loquitur*, was entitled to have his
    case submitted to the jury.

2.  The doctrine of *res ipsa loquitur* does not relieve the plaintiff of
    the burden of the issue, nor raise any presumption in his favor.
    The fact of the accident furnishes merely some evidence to go to
    the jury which requires the defendant "to go forward with his
    proof."

3.  In an action for damages for personal injuries from a defective
    machine, it is essential to the plaintiff's recovery that there
    shall be evidence that the defendant had notice, or could, by
    reasonable care, have known, of such defect.

4.  Where it does not appear what the appellant proposed to show by
    the rejected questions, this court cannot pass upon the excep-
    tions to the trial judge's rulings.

ACTION by M. C. Ross against the Double Shoals Cotton
Mills, heard by *Judge M. H. Justice* and a jury, at the Spring
Term, 1905, of the Superior Court of CLEVELAND. From a
judgment of nonsuit, the plaintiff appealed.

This is an action for personal injury sustained by plaintiff
while operating a lapper in defendant company's mill.

Plaintiff introduced Alfred Gilliam, who testified that he
was 67 years of age, had worked at defendant's mill since he

was 15 and up to two years ago. The lapper was purchased and put in mill six or seven years ago. Examined, and found to be very good, nothing wrong with it, was not new. It was a 36-inch lapper, had been taken out of a mill to give place to a 40-inch one, it run very well. The worm gear gave out and it gave trouble, a good deal first and last. The shaft, the coupling from the evenor plates broke once— was off when left there. The belt shifter fork was wider than the belt and I put on a piece of wood to make it correspond with the width of the belt. Think put the piece of wood next to the tight pully—am not certain; have worked in cotton mills 52 years, was superintendent of defendant mill 32 years. Nothing wrong with the machine. Evenor plates under the feed rolls—then the beater bars—two arms or bars. Beater shaft revolves 1,400 or 1,500 times a minute—bars cannot be seen when cap is down—arched cap on hinges. Could not get hurt when cap is down. Worm gear has no connection with beater or belting. If plaintiff got hurt by beater bars, the worm gear could not have affected it—stop motion rod has no connection with beater bar. Beater bars are stopped by throwing the belt from the tight to the loose pulley by means of the belt shifter. There is no danger of operating machine that I know of.

The shaft, pulleys, belt and belt shifter were brought into court and used by witness in explaining testimony to jury.

Plaintiff testified that he was hurt July, 1904, working for defendant. He had been a card hand—ran machine an hour and a half when it choked down and belt ran off big pulley. Carded the belt off and put belt grease on it to prevent belt from running off—ran five or ten minutes and choked again. Moved the belt shifter, stopped machine and carried two loads of cotton back to the hopper. Jim Champion came along, went to opposite side and raised cap from beater. "I put my hand over feed roll into beater bars to get cotton out. Machine started by some means and tore off my arm to my

elbow; knocked me numb or paralyzed. Had run lapper three months before I was hurt. Belt ran off pulley which runs beater when I got hurt. Am certain that I changed belt shifter and stopped machine when it choked, but cannot tell how it started. When I went to unclog it, know of nothing that could have put the belt on tight pulley." At the close of the evidence, defendant demurred and moved the court to dismiss the action. Motion allowed. Judgment and appeal by the plaintiff.

*Webb & Mull* and *D. F. Morrow* for the plaintiff.
*O. F. Mason* and *Ryburn & Hoey* for the defendant.

Connor, J., after stating the case: We did not have a model of the machine or any of its parts before us, by which to illustrate the testimony and argument. The plaintiff, in the employment of the defendant, was on the day of the injury operating a lapper in defendant's cotton mill. The motive power was applied by a belt running over a pulley on the machine attached to another pulley overhead working upon shafting connected with the power. When it was desired to stop the machine for any purpose, the belt was removed or shifted from the tight to the loose pulley by means of the belt shifter. If the machine became choked with the cotton passing through the beater, and it became necessary to clean it, or remove the cotton, it is stopped by throwing the belt from the tight to the loose pulley, this being done by a shifter. If in proper condition it will remain motionless until the belt is thrown back on to the tight pulley. While machine is in motion, there are parts in which the hand of the operator may be put without injury; there are other parts in which the beater shaft revolves very rapidly. Plaintiff's witness, Gilliam, says that two years ago when he left the mill that the lapper was all right and in good condition. The plaintiff says that on the 11th day of July,

1904, he was operating the lapper, that it became choked and "the belt ran off the big pulley," that he carded the belt off, put belt grease on it to prevent belt from running off. In five or ten minutes it choked again, that he stopped the machine with the belt shifter and carried some cotton back to the hopper. Champion went to the opposite side, raised the cap from the beater, and the plaintiff put his hand into the beater bars to get the cotton out. The machine, by some unknown means, started and tore his arm off.

The plaintiff's witness refers to some defects in parts of the machine which he says could not have had any connection with the plaintiff's injury. The immediate cause of the injury was that by some means the belt was thrown back on the tight pulley. The only testimony which throws any light on the condition of the belt shifter is that of Gilliam, who says, "the belt shifter fork was wider than the belt, and I put on a piece of wood to make it correspond with the width of the belt." There is no suggestion as to what effect, if any, this would have on the movement of the belt.

With the light afforded us, but one of three possible explanations of the unexpected starting of the machine occurs to our minds; either Champion accidentally struck the shifter and threw the belt on to the tight pulley, or the plaintiff, in moving about the machine, did so; or there was some defect in the belt or shifter.

It is elementary learning that the defendant is not liable for the movement of the belt, unless, either by the negligent conduct of some employee not a fellow servant or by some defect in the condition of the shifter, it worked back and threw the belt on to the tight pulley. In this condition of the case, what shall be done? The defendant has charge of the machinery and its operation except in so far as the plaintiff, in the discharge of his duty, had such charge. The plaintiff is suddenly and unexpectedly caught in the machine, struck dumb, his arm torn off, paralyzed. Conceding that

there is no direct evidence of a defect in the machine or any of its parts, is the plaintiff driven to a nonsuit, or may he, upon the doctrine of *res ipsa loquitur*, have his case submitted to the jury to say whether there be actionable negligence which is the proximate cause of his injury.

To prevent any misconstruction of the circumstances under which or the manner in which this principle applies in the trial of causes we wish to restate what was said in *Womble v. Grocery Co.*, 135 N. C., 474: "The principle of *res ipsa loquitur* in such cases carries the question of negligence to the jury, not relieving the plaintiff of the burden of proof, and not raising any presumption in his favor, but simply entitling the jury, in view of all the circumstances and conditions as shown by the plaintiff's evidence, to infer negligence and say whether upon all of the evidence the plaintiff has sustained his allegation." It does not in any degree affect or modify the elementary principle that the burden of the *issue* is on the plaintiff. *Walker, J.,* in *Stewart v. Carpet Co.*, 138 N. C., 60, clearly states the law in this respect: "The doctrine does not dispense with the requirement that the party who alleges negligence must prove the fact, but relates only to the mode of proving it. The fact of the accident furnishes merely some evidence to go to the jury which requires the defendant 'to go forward with his proof.' The rule of *res ipsa loquitur* does not relieve the plaintiff of the burden of showing negligence, nor does it raise any presumption in his favor." The suggestion has been made in argument of cases at this term, that when the rule applies it is the duty of the court to instruct the jury that proof which calls the rule into action constitutes a *prima facie* case or raises a presumption of negligence. This is a misapprehension both of the principle upon which the rule is founded and its application. It must be conceded that expressions are used in cases, some of which are cited in the opinion in *Womble's case, supra,* which give color to the suggestion. These cases were cited as illustrations of the rule; the author

of the opinion was not advertent, as he should have been, to this inaccuracy. The conclusion which is drawn from the cases, and quoted herein, does not contain the error. *Mr. Justice Walker,* in *Stewart's case,* puts the subject in its true light. So learned and accurate a jurist as *Judge Gaston,* in *Ellis v. Railroad,* 24 N. C., 138, being the first time that we find the rule declared in this court, refers to it as making out, when applicable, a *prima facie* case. *Smith, C. J.,* in *Aycock v. Railroad,* 89 N. C., 323, quotes with approval the language used in *Ellis' case, supra.* The correct application of the rule is as stated in *Stewart's case, supra.* In *Haynes v. Gas Co.,* 114 N. C., 203, the court held that permitting a live wire to lie upon the street was negligence—a breach of duty. In that case it was not necessary to invoke the rule. The defendant, by permitting the live wire to be upon the street, became liable for any injuries sustained thereby, unless it showed that it was there through no fault of its agents and servants. The learned *Justice* writing in that case was of the opinion that the rule applied. When, as in that case, a breach of duty is shown which is the proximate cause of the injury, a verdict follows for the plaintiff unless exculpatory circumstances are shown. It is only, as here, when there is no direct evidence of a defect in the machine, and the physical conditions surrounding the transaction do not ordinarily produce injury, that the occurrence speaks for itself. Such conditions are shown to exist in this case. A machine operated as this one with the adjustment of the belt, etc., does not ordinarily resume its motion after being disconnected with the motive power. The evidence shows that it did start suddenly, and, so far as the plaintiff is able to say, from an unknown cause. The defendant says that it was an accident. That may be true, and in the absence of any other testimony a jury would be justified in so finding. But, on the other hand, the jury may infer that this is not a satisfactory explanation; that the difference between the width of the belt fork and the belt in some way

caused the machine to start; that the piece of wood put upon it to make it correspond had worn or dropped out, and that caused the movement of the belt on the pulley. We do not suggest that either of these hypotheses is true. We are not sufficiently advised to have any opinion in regard to it. We merely say that a properly adjusted belt, removed from the tight pulley on to a loose pulley, does not usually get back on to the tight pulley and start the machine at so rapid movement as to tear a man's arm off. It is for this reason the law says that the plaintiff is entitled to have a jury pass upon the physical facts and condition and to say whether in their opinion he has made good his allegation of actionable negligence. The defendant may, or may not, introduce evidence as it is advised. By failing to do so, it admits nothing, but simply takes the risk of *non persuasion*. This is what is meant by going forward with testimony. He, by this course, says that he is willing to go to the jury upon the plantiff's evidence.

While the rule has not been, in express terms, often applied in this State, it is by no means new or of unusual application. Prof. Wigmore says that, for a generation at least, in England it has been conceded to exist "for some classes of cases at least." In 1865 *Erle, C. J.,* in *Scott v. London Dock Co.,* 3 H. & C. (Com. L. R. U. S., 134,) said: "There must be some evidence of negligence, but when the thing is shown to be under the management of the defendant or his servants and the accident is such that, as in the ordinary course of things, does not happen if those who have the management use the proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care." The limitations governing the application of the rule are thus stated by Wigmore. (Sec. 2509).

"(1) The apparatus must be such that, in the ordinary instance, no injurious operation is to be expected, unless from

a careless construction, inspection or user. (2) Both inspection and user must have been at the time of the injury, in the control of the party charged. (3) The injurious occurrence or condition must have happened irrespective of any voluntary action, at the time, by the party injured." The underlying reason for the rule is that usually the chief evidence of the true cause of procedure is practically accessible to the defendant, but inaccessible to the person injured. *Stewart's case, supra.* It is for this reason that in some cases the Legislature has made the fact of injury *"presumptive* evidence" and in others a *"prima facie"* case. *Aycock's case, supra.* The learned counsel for defendant insisted that the plaintiff cannot recover because there is no evidence that, if defective, the defendant had notice or could by reasonable care have known of such defect. It is well settled that this is essential to the plaintiff's recovery. The question is not, in the present condition of the record, presented. We cannot tell in what respect, if at all, the jury would find the shifter or other part of the machine defective. Their attention would be directed to this element in the plaintiff's case, either by a specific issue or by instruction. *Hudson v. R. R.,* 104 N. C., 491. Other questions will probably arise upon the trial. If the belt was thrown upon the tight pulley by an accidental contact with the plaintiff or some other person, or if it was the result of the negligence of a fellow servant, the court would instruct the jury in respect to the law. The question of the plaintiff's own conduct and its effect upon his right to recover, are to be presented by proper instructions. Our ruling is confined to the one question, whether the case should have gone to the jury upon the physical conditions disclosed by the evidence. It does not appear what the plaintiff proposed to show by the rejected questions; hence we cannot pass upon the exceptions to His Honor's rulings.

The judgment of nonsuit must be set aside and a new trial had.

New Trial.