SAMUEL A. WHITE, BY HIS GUARDIAN, ELLA WHITE, v. WALKER D. HINES, DIRECTOR GENERAL OF RAILROADS, AND THE ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 26 October, 1921.)

**1. Pleadings — Admissions— Railroads— Derailment— Negligence— Evidence.**

An admission in the answer of the defendant railroad company of the allegation in the complaint that the damages sought in the action were caused by a derailment while the plaintiff was a passenger in the defendant's coach, is competent as evidence of a separate fact relative to the issue as to the defendant's negligence, and does not require that further part of the answer, disclaiming negligence or fault, must also be introduced by the plaintiff.

**2. Same—Res Ipsa Loquitur—Prima Facie Case.**

Where the plaintiff alleges that his ward was injured by the derailment of a coach in which he was riding as a passenger, the proof of the plaintiff's qualification as guardian, the derailment of the train, and the ward's personal injury as the proximate result, nothing else appearing, makes a *prima facie* case of defendant's negligence.

**3. Same—Burden of the Issue—Defendant's Further Evidence—Verdict.**

Where a *prima facie* case of negligence is made out the jury will be justified in finding for the plaintiff thereon, the burden of the issue remaining on the plaintiff, it being for the jury to determine whether upon the entire evidence the plaintiff has established the defendant's negligence by the greater weight of the evidence, leaving it for the defendant to determine whether it will introduce further evidence or take the chance of an adverse verdict on the issue.

**4. Evidence—Mental Capacity—Negligence—Receipt for Damages.**

Where a receipt in full of damages has been signed by the plaintiff's ward in his action to recover damages of a railroad company for its negligent injury to the ward, it is competent to show that at the time the mental condition of the ward, resulting from the injury, was insufficient for him to have understood what he was doing, or its effect.

**5. Evidence— Opinion Upon the Facts— Nonexpert Witnesses— Mental Capacity.**

Where the sufficient mental capacity of one who has signed a receipt in full for damages caused by the negligent acts of another is at issue in an action, a nonexpert witness who has had personal observation of the acts and conduct of the one who has signed, and has had conversations with him, may thereon state whether he, at the time of signing, was crazy or abnormal, and such is not objectionable as his opinion upon the facts.

**6. Same.**

It is competent to show, as the basis of a nonexpert opinion as to mental incapacity of a party who has receipted in full for damages for a personal injury, the manner in which such person treated his family before and

after the injury, his disregard to his physician's advice, his declarations and conduct, and his former mentality and physical vigor, with the other evidence in the case, when tending to sustain the opinion of the witness.

**7. Evidence—Expert Opinion.**

The opinion of a physician, testifying as an expert to the mental incapacity of a person, relevant to the inquiry, may be given in evidence when based upon his own observation.

**8. Evidence—Rebuttal—Mental Capacity.**

Where the mental incapacity of the ward to give a receipt for damages is relevant to the inquiry in plaintiff's action to recover damages for an injury alleged to have been negligently inflicted on him, which was relied upon as a defense to the action, and the defendant's witness has testified that he was in sound mental condition when he received the check therefor, it is competent for the plaintiff's witness to testify in contradiction of the testimony of the defendant's witness, that the ward was not of sufficient mental capacity at that time.

**9. Evidence—Photographs—Accuracy—Witnesses.**

Where a photograph of a place where a personal injury occurred is evidence in an action for a personal injury which occurred at the place, it is not required that the photographer himself should testify as to the accuracy of the picture, for this may be done by another witness who knows of the fact.

**10. Evidence— Opinions— Expert Witnesses— Facts Within Their Own Knowledge.**

Objection to the testimony of a medical expert on the question of insanity involved upon trial in this case, that the questions eliciting it were not sufficiently definite, and that they contained hypotheses for the support of which there was no evidence, are found to have been untenable upon a careful examination of the record by the Court.

**11. Instructions—Correct as a Whole—Erroneous Portions.**

The charge of the court must be construed connectedly as a whole, presuming that the jury considered every portion thereof; and if it presents the law fairly and correctly, it will not be held erroneous because of some of its expressions, standing alone, may be regarded as erroneous.

**12. Same—Res Ipsa Loquitur—Prima Facie Case.**

Where the charge of the court, under the doctrine of *res ipsa loquitur*, places the burden of the issue of negligence on the plaintiff, and gives the proper effect to the *prima facie* case, if established, the defendant is required to go forward with his evidence in explanation or take the chances of an adverse verdict.

APPEAL by defendants from *Daniels, J.,* at the March Term, 1920, of CUMBERLAND.

This was a civil action brought by the plaintiff to recover damages for injury to Samuel A. White, the ward of the plaintiff, alleged to have been caused by the negligence of the defendants. The case was tried before his Honor, Daniels, J., and a jury, at the March Term, 1920, of

the Superior Court of Cumberland County, the trial resulting in a verdict and judgment for the plaintiff, from which defendants appealed to the Supreme Court.

The plaintiff moved to substitute John Barton Payne as the successor of Walker D. Hines, as Director General of Railroads.

Upon the trial there was evidence for the plaintiff tending to show that her ward, Samuel A. White, while a passenger on a train of the defendants, was injured by the derailment of the train; that he was "thrown about within the coach," which was overturned; that he was injured on the back of the head about the base of the brain, and that his body and limbs were bruised; that his mind was seriously affected; that he was treated, after the injury in the Tranquil Park Sanitarium in Charlotte, at Johns Hopkins Hospital in Baltimore, and at the Highsmith Hospital in the city of Fayetteville, and that he is now confined in the State Hospital for the Insane. The plaintiff alleged that the injuries were caused by the negligence of the defendants in the operation of the train; in the negligent care of the rolling stock and roadbed, and in the negligent failure properly to inspect and to care for them. The plaintiff further alleged that her ward, by reason of said injuries, had suffered great pain, had incurred expense for medical and hospital service, had been ruined in physical health, and made permanently insane; that his earning capacity had been destroyed, and his family deprived of his support; that prior to the alleged injuries, to wit, 20 July, 1917, her ward had been strong and vigorous, both mentally and physically, and that he had been industrious, skillful, and proficient in his occupation of "beamer and stationary engineer."

The defendants denied that they were negligent in any of the respects complained of, and alleged that the plaintiff's injury, if any, was due to an accident which could not reasonably have been foreseen or prevented.

The defendants further alleged that the plaintiff's ward had executed to the Atlantic Coast Line Railroad Company, one of the defendants, a release and receipt in full for his claim for damages resulting from the alleged injuries. This alleged release was introduced in evidence.

There was evidence tending to show that the derailment had been caused by a washout in the roadbed; that the section master had examined the track about three hours before the derailment occurred, and had found it apparently in safe condition; that the train had been inspected before it left Rocky Mount, and was found to be in good condition in all respects, and that it was skillfully operated by a competent crew. There was evidence tending to show that there had been heavy rains for one or two days, and that a hole under the track, five or six feet deep, had been caused by water running underneath.

There was evidence for the plaintiff tending to show that her ward's mind had been seriously impaired by the injuries which he had sustained in the derailment, and that he did not have sufficient mental capacity to execute the release introduced in evidence by the defendants, and that the release had been procured by fraud and undue influence. Plaintiff contended that said release, for this reason, was voidable. There was evidence for the defendant tending to show that the plaintiff's ward had sufficient mental capacity to execute said release. Evidence was introduced tending to show his mental condition prior to the alleged derailment, at that time, and thereafter, and especially with reference to his mental condition at the time the release was alleged to have been signed. There was further evidence for the plaintiff tending to show that her ward had judicially been declared a lunatic in July, 1918, by a proceeding duly prosecuted before the clerk of the Superior Court of Cumberland County, and that the plaintiff had duly been appointed as his guardian.

At the close of the plaintiff's evidence the defendants moved for judgment as in case of nonsuit, and at the close of all the evidence this motion was renewed.

The defendant's motion was allowed as to the Railroad Administration and denied as to the Atlantic Coast Line Railroad Company. To the court's refusal to dismiss as to the railroad company, the company duly excepted.

The issues were answered by the jury as follows:

"1. Was the plaintiff injured by the negligence of the defendant as alleged in the complaint? Answer: 'Yes.'

"2. Did plaintiff execute the release set out in the answer? Answer: 'Yes.'

"3. Was the execution of said release procured by fraud or undue influence, as alleged in the reply? Answer: 'Yes.'

"4. Was plaintiff incapable, by reason of mental affliction, to execute the said release, as alleged in the reply? Answer: 'Yes.'

"5. What damages, if any, is plaintiff entitled to recover of the defendant? Answer: "$12,500, less $554 paid.' "

Judgment was entered for $11,946, together with the costs of this action. The defendants appealed.

*Evans & Eason for plaintiff.*
*Rose & Rose for defendants.*

ADAMS, J. There are fifty-two exceptions in the record, several of which have been formally abandoned.

The plaintiff alleged that the train in which her ward was traveling "was wrecked by derailment." In their answer the defendants admitted that the train was "wrecked by derailment without fault or negligence on the part of the defendants, or any of their agents or employees." The plaintiff offered in evidence the following portion of the answer:

"Answering the allegations contained in article five of the complaint, the defendants admit that on 20 July, 1917, S. A. White was a passenger on train No. 89, of defendants, en route to Hope Mills, N. C., and that while said White was a passenger on said train, about one and one-half miles from Hope Mills, said train was wrecked by derailment."

The defendants objected on the ground that the remainder of their allegation was omitted, and that the court below should have excluded the evidence or required the plaintiff to offer the additional phrase denying "fault or negligence on the part of the defendants." The evidence offered by the plaintiff was admitted, and the defendants excepted. This is the first exception in the record.

Evidence of the derailment and of the ward's injury as the proximate result was sufficient on the question of negligence to carry the case to the jury. The plaintiff's allegation that the train had been wrecked by derailment was the distinct statement of a circumstance relevant to the first issue. Proof of the plaintiff's qualification as guardian, of the derailment of the train, and of the ward's personal injury as the proximate result, nothing else appearing, made a *prima facie* case for the plaintiff, and upon the defendants devolved the duty of explaining the alleged wreck. In a number of decisions, this principle has been applied, and it has frequently been held, in accordance with his Honor's ruling, that the admission of a separate fact relevant to the inquiry, though only a part of an entire paragraph, is competent without qualifying or explanatory matter inserted by way of defense. *Sawyer v. R. R.,* 145 N. C., 30; *Stewart v. R. R.,* 136 N. C., 387; *Wade v. Contracting Co.,* 149 N. C., 177. The first exception cannot be sustained.

Exceptions 9, 10, 11, 21, 23, 24, 29, 30, 32, 35, 36, 38, and 39 are addressed, directly or inferentially, to the mental condition of the plaintiff's ward, and may be grouped and considered together. All these exceptions are without real merit. The defendants offered in evidence a paper-writing purporting to be the ward's receipt for $554 and a release of the railroad company from all liability resulting from the derailment. The plaintiff replied that Samuel A. White was mentally incapacitated to such an extent that at the time of its execution he could not comprehend the nature and effect of the instrument to which he had affixed his signature. Evidence as to White's mental condition, then, was both material and essential. The defendants contended that testimony to the effect that he "was crazy" or "not normal," was the state-

ment of a positive conclusion, or fact, and, for this reason, incompetent. But in this jurisdiction it is established that a nonexpert witness, who has had conversations and dealings with another, and a reasonable opportunity, based thereon, of forming an opinion as to the mental condition of such person, is not disqualified on the ground that his testimony is a mere expression of opinion. *McLeary v. Norment,* 84 N. C., 235; *In re Stocks,* 175 N. C., 224; *In re Broach,* 172 N. C., 522. One not an expert may give an opinion, founded upon observation, that a certain person is sane or insane. *Whitaker v. Hamilton,* 126 N. C., 470; *Clary v. Clary,* 24 N. C., 78. Evidence as to the manner in which White treated his family before and after the injury was admitted on the issue of mental competency. His Honor carefully limited this evidence to the fourth issue. Upon this issue evidence of his stay in various hospitals was likewise competent.

The admission of Mrs. Porter's testimony that "we all begged him (White) not to go to Hopewell, and he went anyhow, and that the doctor advised him not to go back," is not reversible error. White's conduct and declarations were competent on the question of his mental condition, and as a fact in connection with other circumstances, upon which Mrs. Porter founded her opinion of his mental capacity. *McLeary v. Norment, supra; Clary v. Clary, supra; S. v. Cooper,* 170 N. C., 719. Nor is the testimony of Deaver touching White's mental condition three years before the injury ground for reversal. The plaintiff's allegation that prior to the injury her ward was "strong and healthy, both mentally and physically" was denied by the defendants, and this evidence, offered in support of the plaintiff's allegation, was not too remote to be considered by the jury.

We are unable to see why the testimony of Dr. Small, based upon his observation concerning the condition of the plaintiff's ward at the trial, was not competent. The plaintiff distinctly alleged that White' insanity was permanent, and this the defendants denied. Evidence as to his mind subsequent to the injury and at the time of the trial was clearly competent in support of the plaintiff's contention. This disposes of exceptions 45, 46, and 47.

E. L. McDonald, a witness for the defendants, testified that he had paid White a check for $554, and that his mental condition at that time was good. On cross-examination he denied having told the plaintiff that White "was in mighty bad shape" when he gave White the check. The evidence of J. W. McFayden and of the plaintiff was admitted only for the purpose of contradicting McDonald. Exceptions 33, 34, are therefore overruled.

Exception 22 also is untenable. A witness for the plaintiff was permitted to testify, over the objection of the defendants, that a photo-

graph "was a correct picture of the wreck." That a photograph is a true representation may be shown by witnesses other than the photographer. *Bane v. R. R.,* 171 N. C., 332. But the evidence was harmless in any event, since the photograph was neither introduced in evidence nor exhibited to the jury.

Exceptions 43 and 44 relate to interrogatories propounded to Dr. Small, a medical expert. The objection is that the questions were not sufficiently definite, and that they contained hypotheses for the support of which there was no evidence. We have bestowed upon these questions a critical examination, and have concluded that the evidence was properly admitted. *S. v. Cole,* 94 N. C., 960; *S. v. Keene,* 100 N. C., 509; *S. v. Wilcox,* 132 N. C., 1120; *Summerlin v. R. R.,* 133 N. C., 550.

Exceptions 49 and 50, which are directed to the charge of the court concerning the "shifting of the burden of proof," cannot be sustained.

His Honor instructed the jury as follows:

"Our Supreme Court has laid down the principle that where one is a passenger on a train and the train is derailed and he is injured, and the derailment is the proximate cause of the injury, then the burden shifts to the defendant. The burden originally was on the plaintiff in this case to satisfy the jury by the greater weight of the evidence that there was negligence in respect to the roadbed, on the part of the defendant, and that this negligence was the proximate cause of the injury, but where it is admitted that plaintiff was a passenger on a train of defendant, and that train was derailed, and if the jury should be satisfied by the greater weight of the evidence that the plaintiff was injured and that his injury was the proximate result of the derailment of defendant's train, then the burden shifts to defendant, and the defendant must go forward and produce evidence to relieve itself of the charge of negligence and show to the jury that it is not guilty of the negligence or that its negligence was not the proximate cause of the injury. . . . Now under this first issue the burden of it being upon the plaintiff, if you are satisfied by the greater weight of the evidence that plaintiff was a passenger on the train of the defendant company, and if you are satisfied by the greater weight of evidence that he was injured, and that his said injury was proximately caused by the negligence of defendant, then you will answer the first issue Yes; otherwise you will answer it No. . . . And if you should be satisfied by the greater weight of the evidence that there was a derailment by which the plaintiff's injury was proximately caused, nothing else appearing, you should answer the first issue yes, unless the defendant has satisfied you that there was no negligence on the defendant's part, with reference to the construction of the roadbed, and with respect to the proper inspection of conditions that prevailed there.

"Then, if you are satisfied, gentlemen, by the evidence, or if you are satisfied by the testimony introduced by the defendant, the burden being on the defendant that in the construction of its roadbed the defendant exercised reasonable care and that it was inspected and repaired in a proper manner, then you will answer the first issue No. If you answer the first issue No, that ends the case, and you need not consider the issues further."

To each of these instructions the defendant duly excepted, contending that they were tantamount to shifting the burden of proof from the plaintiff to the defendant. In this connection the court further said:

"The defendant contends that this was an accident; that it had done all of its duty, as I have told you was required of it, but that on account of the heavy rains existing there, it could not, in the exercise of its proper care, have discovered the conditions of the roadbed; that the roadbed had been properly constructed and inspected (there is evidence that it had been inspected on that day by the roadmaster and the section-master), and that the defendants did not and could not, in the exercise of such reasonable care, as I have described to you, have discovered that it was in defective condition."

The exceptions require a brief examination of former decisions of this Court which, it is admitted, unfortunately disclose expressions as to the burden of proof and the burden of the issue that are inconsistent, contradictory, and confusing. Beginning with *Ellis v. R. R.,* 24 N. C., 138, in which the plaintiff sought to recover damages for loss caused by fire escaping from the defendant's locomotives, this Court, in discussing the principle to which the exceptions relate, said: "We admit that the gravamen of the plaintiff is damage caused by the negligence of the defendants. But we hold that when he shows damage resulting from their act, which act, with the exertion of proper care, does not ordinarily produce damage, he makes out a *prima facie* case of negligence, which cannot be repelled but by proof of care or of some extraordinary accident which renders care useless."

Referring to *Ellis' case, Justice Read* said: "In that case the plaintiff proved that his fence was fifty feet from the railroad and that sparks from the engine set it on fire; and that although it had been there for a long time, it had never caught fire before, and that the engine usually had a spark-catcher, but it did not appear whether it had one on that day. There was no evidence by the plaintiff, and the defendant offered none. It was held to be *prima facie* negligence. Of course it was. There was the plain fact that the defendant had set fire to the plaintiff's fence, which the prudent use of his engine had never fired before. That made it necessary for the defendant to show that he had used the same care on that day as had been used theretofore. If he had proved

that the engine was supplied with a spark-catcher and that the usual care was used, the decision would have been the other way." In *Aycock v. R. R.,* 89 N. C., 321, a suit for the recovery of damages caused by fire from a passing locomotive, *Chief Justice Smith,* in discussing *R. R. v. Schurtz,* 2 A. & E. R. R. Cases, 271, used this language: "A numerous array of cases are cited in the note in support of each side of the question as to the party upon whom rests the burden of proof of the presence or absence of negligence, where only the injury is shown, in case of fire from emitted sparks. While the author favors the class of cases which imposes the burden upon the plaintiff, we prefer to abide by the rule so long understood and acted on in this State, not alone because of its intrinsic merit, but because it is so much easier for those who do the damage to show the exculpating circumstances, if such exist, than it is for the plaintiff to produce proof of positive negligence. The servants of the company must know and be able to explain the transaction, while the complaining party may not; and it is but just that he should be allowed to say to the company, you have burned my property, and if you are not in default show it and escape responsibility." The learned *Chief Justice* followed this decision by another in *Lawton v. Giles,* 90 N. C., 380, in which he said: "The reason for the exception to the general rule that one required to allege must prove negligence, in the case of fire caused by steam engines, is thus stated in a late and valuable treatise: 'All information as to the construction and working of its engines is in the possession of the company, as are also the means of rebutting the charge of negligence entirely in its power' An outsider can hardly be expected to prove that in the construction of the engine, or in the use of it, at the time the injury occurred, the company was guilty of negligence. He can only prove that his property was destroyed by one of the company's locomotives; and having done this, it is but proper to call on the defendant to show that he was not negligent; that he employed careful and competent servants, and that he had used the most improved appliances to *prevent the escape of fire from his engines.* 1 Thomp. Neg., 153, par. 3."

In *Grant v. R. R.,* 108 N. C., 467, there may be observed a marked departure from the principle announced in preceding decisions. There the plaintiff brought suit to recover damages for personal injury caused by derailment. The trial judge instructed the jury that after the *prima facie* case of negligence was shown by the derailment of the train, "the laboring car was shifted to the defendant, and the defendant must show by a preponderance of the evidence that the defendant had not been guilty of negligence." The judgment of the lower court was affirmed, but in *Williams v. R. R.,* 130 N. C., 128, and in *Shepard v. Telegraph Co.,* 143 N. C., 244, a similar charge was expressly disapproved. The

*Williams case* was followed by another in which it was held that the trial judge was in error when he instructed the jury that if the fire originated from the defendants' engine, "this would not of itself cast the burden on the defendant to prove that the engine was properly equipped with spark arresters, and skillfully operated. *Hosiery Co. v. R. R.,* 131 N. C., 240. In *Mfg. Co. v. R. R.,* 122 N. C., 888, it is said that when the origin of the fire is fixed upon the defendant, the presumption of negligence arises, and the burden rests upon the defendant to show that approved appliances were used; and in *Marcom v. R. R.,* 126 N. C., 204, it is said that the burden of proving a failure of legal duty rests upon the plaintiff, but when that fact is shown or admitted, the burden is on the defendant to excuse its failure. To the same effect is *Wilkie v. R. R.,* 127 N. C., 208, which was the case of a derailment. In *Overcash v. Electric Co.,* 144 N. C., 573, the plaintiff sued to recover damages for personal injury caused by the derailment of an electric car. The plaintiff's counsel, undertaking to conform their prayer to the cases theretofore decided, requested the court to give the following instruction, which was declined: "That if they find as a fact, from the evidence, that the plaintiff got aboard defendant's car and paid his transportation therefor, then he was a passenger on same; and if they further find as a fact, from the evidence, that the said car on which he was riding ran off the track and plaintiff was injured thereby, as alleged in the complaint, and that said derailment was the proximate cause of the injury, then the law presumes that the defendant was negligent in allowing said car to become derailed, and the burden is upon it to satisfy the jury that said derailment was not caused by its negligence; and unless it has so satisfied the jury they should answer the first issue 'Yes.'" The defendant prayed this instruction, which also was refused: "That while proof or admission of the derailment of the car raised what the law terms a presumption that such derailment was the result of the defendant's negligence, and casts upon it the burden of disproving negligence, yet the court charges you that, notwithstanding the fact that the car was derailed, if you shall find by the greater weight of the evidence that the track at the place of derailment was in good condition, the car properly equipped and in good repair, and being carefully run at a proper rate of speed, then the court instructs you that the defendant was not guilty of negligence, and you will answer the first issue 'No.'" The charge, which was approved by this Court, was as follows: "If you believe the evidence in this case, that there was a derailment of the defendant's car at the time of the injury complained of, and if there was a derailment, there would arise from this fact alone a presumption of negligence upon the part of the defendant, and this presumption of negligence, if not rebutted, is evidence of negligence

for consideration of the jury, and if it satisfies you that the defendant was negligent and that this negligence was the real and proximate cause of the injury, then it would be the duty of the jury to answer the first issue 'Yes,' This presumption of negligence may be rebutted by showing that the track of the defendant company was in a reasonably safe condition; that the car was equipped in a reasonably safe manner, and that it was being operated in a reasonably prudent way; and, if rebutted, then the presumption of negligence arising from the derailment is no longer evidence of negligence." In this charge the "burden" is not devolved upon the defendant. In fact, the judge declined the plaintiff's prayer that the presumption of negligence arising from the derailment "cast upon the defendant the burden of disproving negligence." The case of *Stewart v. R. R.,* 137 N. C., 690, had previously decided, certainly in effect, that "the burden is thrown upon the defendant to disprove negligence on its part." Apparently inconsistent with this position are such cases as *Womble v. Grocery Co.,* 135 N. C., 474; *Stewart v. Carpet Co.,* 138 N. C., 60; *Ross v. Cotton Mills,* 140 N. C., 115; *Shepard v. Telegraph Co., supra; Mumpower v. R. R.,* 174 N. C., 743. In *Cox v. R. R.,* 149 N. C., 117, the question is again presented. The court charged the jury, "If you find from the evidence that the fire which injured the plaintiff's property escaped from the defendant's engine, there is a presumption in law of negligence on the part of the defendant in the operation of its train, and in that event the burden of proof is cast upon the defendant to satisfy you that it was not negligent in the respect complained of." The Court said: "To this instruction exception was duly taken, and we think it was erroneous. It evidently made the impression upon the jury that the emission of the sparks raised a legal presumption of the defendant's liability and shifted the burden of proof to the defendant, in the sense that it had failed to satisfy them that there was no negligence; in other words, that if its engine was properly equipped and operated, they should return a verdict for the plaintiff. This charge is not sustained by the decisions of this Court. The presumption is one of fact and not law. Evidence that the sparks were emitted from the engine and that they set fire to the timber made a *prima facie* case for the plaintiff, but only to the extent of being evidence sufficient to carry the case to the jury and to warrant a verdict in favor of the plaintiff, if the jury should find the ultimate or crucial fact that the fire was caused by the defendant's negligence."

In the recent case of *Winslow v. Hardwood Co.,* 147 N. C., 275, we said: "The burden of the issue does not shift, but the burden of proof may shift from one party to the other, depending upon the state of the evidence. When the plaintiff introduces testimony in a case of this kind to the effect that the injury to him was caused by the derailment of

a train, it is sufficient to carry the case to the jury; but the burden of the issue remains with the plaintiff, though the burden of proof may shift to the defendant in the sense that, if he fails to explain the derailment by proof in the case, either his own or that of the plaintiff, he takes the chance of an adverse verdict, for then the jury may properly conclude that the plaintiff has established the affirmative of the issue as to negligence by the greater weight of the testimony. But the defendant is not required to overcome the case of the plaintiff by a preponderance of the evidence." This fits our case exactly, and distinctly shows the error in the instruction of the court. *Judge Elliott* states the general rule which applies in cases of this kind with clearness and accuracy when he says: "The burden of the issue, that is, the burden of proof in the sense of proving or establishing the issue or case of the party upon whom such burden rests, as distinguished from the burden or duty of going forward and producing evidence, never shifts, but the burden or duty of proceeding or going forward often does shift from one party to the other, and sometimes back again. Thus, when the actor has gone forward and made a *prima facie* case, the other party is compelled in turn to go forward or lose his case, and in this sense the burden shifts to him. So the burden of going forward may, as to some particular matter, shift again to the first party in response to the call of a *prima facie* case or presumption in favor of the second party. But the party who has not the burden of the issue is not bound to disprove the actor's case by a preponderance of the evidence, for the actor must fail if, upon the whole evidence, he does not have a preponderance, no matter whether it is because the weight of evidence is with the other party or because the scales are equally balanced." 1 Elliott on Evidence, 139. We have approved the rule, as thus stated by *Judge Elliott,* and notably in *Board of Education v. Makely,* 139 N. C., 31, and *Shepard v. Tel. Co.,* 143 N. C., 244. The charge of the court was, we think, contrary to the principle established by those and the following cases: *Overcash v. Electric Co.,* 144 N. C., 572; *Ross v. Cotton Mills,* 140 N. C., 115; *Stewart v. Carpet Co.,* 138 N. C., 60; *Womble v. Grocery Co.,* 135 N. C., 474; *Stanford v. Grocery Co.,* 143 N. C., 419, and *Furniture Co. v. Express Co.,* 144 N. C., 644.

As to the duty of the defendant, it will seem that various expressions have been used. It has been held that after the plaintiff has established his *prima facie* case, the defendant must repel it by proof of care (*Ellis v. R. R., supra*), or repel the presumption of negligence (*Aycock v. R. R., supra),* or excuse its failure *(Marcom v. R. R., supra),* or assume the burden of proving that it had used the necessary precautions (*Aman v. Lumber Co.,* 160 N. C., 370), or to go forward with proof (*Ross v. Cotton Mills, supra*).

The attempt to reconcile all the cases on this question would be a useless task; but from the perplexing variety of decisions this Court, in the more recent cases, has undertaken to formulate a rule that should be accepted as reasonable, definite, and stable.

Although there are expressions in some of our decisions that seem to indicate a distinction between the terms *res ipsa loquitur* and *prima facie* case, the distinction is most plausibly drawn in those cases which require the defendant to disprove negligence. The terms are often used interchangeably, as in *Kay v. Metropolitan Co.,* 163 N. Y., 447, in which it is said: "In the case at bar the plaintiff made out her cause of action *prima facie* by the aid of a legal presumption (referring to *res ipsa loquitur*). *S. v. Wilkerson,* 164 N. C., 435. ·

In 20 R. C. L., sec. 156, it is said concerning the doctrine of *res ipsa loquitur:* "While it may be true that the mere fact of injury will not give rise to a presumption of negligence on the part of any one, it is also true that some accompanying elemental facts have long been deemed to be sufficient proof of negligence to establish a *prima facie* case in favor of a person maintaining an action therefor. The presumption arises, it has been said, from the inherent nature and character of the act causing the injury. Presumptions arise from the doctrine of probabilities. The future is measured and weighed by the past, and presumptions are created from the experience of the past. What has happened in the past, under the same conditions, will probably happen in the future, and ordinary and probable results will be presumed to take place until the contrary is shown. More precisely the doctrine *res ipsa loquitur* asserts that whenever a thing which produced an injury is shown to have been under the control and management of the defendant, and the occurrence is such as in the ordinary course of events does not happen if due care has been exercised, the fact of injury itself will be deemed to afford sufficient evidence to support a recovery in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care. . . . The presumption of negligence herein considered is, of course, a rebuttable presumption. It imports merely that the plaintiff has made out a *prima facie* case which entitles him to a favorable finding unless the defendant introduces evidence to meet and offset its effect. And, of course, where all the facts attending the injury are disclosed by the evidence, and nothing is left to inference, no presumption can be indulged—the doctrine *res ipsa loquitur* has no application."

A *prima facie* case or evidence is that which is received or continues until the contrary is shown. It is such as in judgment of law is sufficient to establish the fact, and if not rebutted remains sufficient for the purpose. *Troy v. Evans,* 97 U. S., 3; *Kelly v. Johnson,* 6 Pet., U. S.,

622; Jones on Evidence, sec. 8; *S. v. Floyd,* 35 N. C., 385; *S. v. Wilkerson, supra.* Even if the *prima facie* case be called a presumption of negligence, the presumption still is only evidence of negligence for the consideration of the jury. *Overcash v. Electric Co., supra; Shepard v. Telephone Co., supra; Mumpower v. R. R., supra.*

In some of our decisions the expressions *res ipsa loquitur, prima facie* evidence, *prima facie* case, and presumption of negligence have been used as practically synonymous. As thus used, each expression signifies nothing more than evidence to be considered by the jury. *Womble v. Grocery Co., supra; Stewart v. Carpet Co., supra; Ross v. Cotton Mills, supra; Shepard v. Telegraph Co., supra; Mumpower v. R. R., supra; Perry v. Mfg. Co.,* 176 N. C., 69.

When the plaintiff proves, for instance, that he has been injured by the fall of an elevator, or by a derailment, or by the collision of trains, or other like cause, the doctrine of *res ipsa loquitur* applies, and the plaintiff has a *prima facie* case of negligence for the consideration of the jury. Such *prima facie* case does not necessarily establish the plaintiff's right to recover. Certainly, it does not change the burden of the issue. The defendant may offer evidence or decline to do so at the peril of an adverse verdict. If the defendant offer evidence the plaintiff may introduce additional evidence, and the jury will then say whether upon all the evidence the plaintiff has satisfied them by its preponderance that he was injured by the negligence of the defendant.

We may remark in this connection that in *Currie v. R. R.,* 156 N. C., 422, the burden of the second issue was imposed upon the defendant because, contrary to the usual practice, two issues instead of one were submitted to the jury on the question of negligence.

As applicable to this class of cases the rule formulated by the more recent decisions of this Court is substantially as follows: In all instances of this character, after the plaintiff has established a *prima facie* case of negligence, if no other evidence is introduced, the jury will be fully warranted in answering the issue as to negligence in favor of the plaintiff, but will not be required to do so as a matter of law. When such *prima facie* case is made, it is incumbent upon the defendant to offer proof in rebuttal of the plaintiff's case, but not to the extent of preponderating evidence. The defendant, however, is not required as a matter of law to produce evidence in rebuttal; he may decline to offer evidence at the peril of an adverse verdict. If he offer evidence, the plaintiff may introduce other evidence in reply, and the jury will finally determine whether the plaintiff is entitled by the greater weight of all the evidence to an affirmative answer to the issue; for throughout the trial the burden is upon the plaintiff to show by the greater weight of the evidence that he is entitled to such answer.

In his instructions to the jury his Honor evidently had in mind the principle stated in the later decisions of this Court. The charge must be considered as a whole in the connected way in which it was given, and upon the presumption that the jury did not overlook any portion of it. If, when so construed, it presents the law fairly and correctly, it will afford no ground for reversing the judgment, though some of the expressions when standing alone might be regarded as erroneous.  *S. v. Exum,* 138 N. C., 602; *Hodges v. Wilson,* 165 N. C., 323.

We do not understand that his Honor shifted to the defendant the burden of the issue, or even the burden of preponderating proof, but imposed on the defendant merely the duty of going forward with evidence tending to relieve itself of the charge of negligence, or to show there was no negligence, or, if there was, that the defendant's negligence was not the proximate cause of the injury. The paragraph of the charge in which his Honor used the expression "the burden being on the defendant" must be construed in connection with the first paragraph. It is manifest that his Honor used the word "burden" in each paragraph as signifying merely the burden of going forward with evidence tending to rebut the plaintiff's case.

His Honor conformed his charge to the requirements of *Perry v. Mfg. Co.,* 176 N. C., 70, in which there are expressions apparently going beyond the exigencies of the case in devolving upon the defendant the burden of establishing his defense to the satisfaction of the jury. In that case the trial judge instructed the jury that the burden would be shifted to the defendant to show that the fire was not due to its negligence. *Justice Allen* said, referring to the charge: "The instruction, reasonably construed, means that if the jury found from the facts recited by the judge the main fact that the engine sparks started the fire, a *prima facie* case was presented, calling upon the defendant to go forward with his proof, or take the risk before the jury of an adverse verdict." *Williams v. Mfg. Co.,* 177 N. C., 512. In view of one or two expressions in *Perry's case,* we suggest that, in cases of negligence in which the doctrine of *res ipsa loquitur* applies, after all the evidence is introduced, the vital question is not whether the defense specifically relied on is established to the entire satisfaction of the jury, but whether on the issue of negligence the evidence preponderates in favor of the plaintiff, and by this test the answer to the issue is to be determined. The conclusion reached in *Page v. Mfg. Co.,* 180 N. C., 335, is directly in point: "It is true that expressions are to be found in some of our cases, filtered there from two or three cases based on the English rule, which justified his Honor's charge, but since they were decided we have adhered to the true and correct rule, which is stated in *Stewart v. Carpet*

*Co., supra; Womble v. Grocery Co., supra; Cox v. R. R., supra; Shepard v. Tel. Co., supra,* and many other cases, and which we have applied in this case, the substance of which is that the burden to prove his case is always on the plaintiff, whether the defendant introduces evidence or not. Where we have said, 'it is the duty of the defendant to go farward with his proof,' it was only meant in the sense that if he expects to win it is his duty to do so or take the risk of an adverse verdict, and not that any burden of proof rested upon him. He pleads no affirmative defense but the general issue, and this puts the burden throughout the case on the plaintiff, who must recover, if at all, by establishing his case by the greater weight of evidence. The Supreme Court of the United States has so stated the rule, and it referred with approval to our cases above cited. We say this much again, in the hope that the rule, as we have stated it, may hereafter be considered as the correct one."

The other exceptions are formal and require no discussion. Of course it will be understood that the rule herein stated is not intended in any way to modify the well established principles that apply in case of homicide. We find

No error.